SPECTOR UNITED EMPLOYEES CREDIT UNION, FORMERLY HENNIS CREDIT
UNION v. WILLIAM MICHAEL SMITH AND HERBERT RAY

No. 7921SC547

(Filed 4 March 1980)

**Uniform Commercial Code § 43— sale of secured property—subsequent new loan
agreement—future advance—summary judgment improper**

In an action to determine whether plaintiff lender was entitled to posses-
sion of personal property, used to secure a loan, which was subsequently sold
to a third party, the trial court erred in granting summary judgment for plain-
tiff where a genuine issue of fact existed as to whether plaintiff and defendant
borrower intended their loan transaction of June 1977 to renew, enlarge or ex-
tinguish the note executed in April 1976 by borrower which was secured by
the property in question, since the nature of the second loan determined
whether it was a future advance within the meaning of G.S. 25-9-307(3) and
thus whether defendant purchaser from defendant borrower took the property
in question free from plaintiff lender's security interest.

APPEAL by defendant from *Washington, Judge*. Judgment
entered 15 February 1979 in Superior Court, FORSYTH County.
Heard in the Court of Appeals 16 January 1980.

This is an action to determine whether the plaintiff lender is
entitled to possession of personal property used to secure a loan
which was subsequently sold to a third party. On 29 April 1976
defendant William Michael Smith purchased an eighteen-foot 1976
Larson motorboat and a 1976 Cox trailer with funds he had ob-
tained from the plaintiff credit union. On the date of purchase,
Smith executed a note in the principal amount of $6,500 and a
security agreement granting plaintiff a security interest in the
boat and trailer. The security agreement stated that its purpose
was to secure the note "and all extensions or renewals thereof,"
and the "payment of all other obligations and liabilities of Debtor
to Credit Union whether now held or hereafter acquired . . . in-
cluding all future advances Credit Union may make to Debtor
. . . ." Plaintiff perfected its security interest in the collateral by
the timely filing of a financing statement.

Defendant Smith sold the boat and trailer to defendant
Herbert Ray on 19 August 1976. Both defendants executed a "Bill
of Sale" reciting that defendant Ray was "aware of a lien" on the
boat and trailer. On 20 June 1977 plaintiff loaned defendant Smith
the principal sum of $6,239.26. Smith executed a note in this

amount and another security agreement listing the boat and trailer he had previously sold to Ray as collateral. Of the proceeds loaned to Smith, $5,620.41 were used to pay the balance owed on the 29 April 1976 note and the remaining amount was applied to previous loans made by plaintiff to defendant Smith. In his application for this latter loan, Smith stated that the purpose of the loan was to "catch up on loans and bills." Defendant Smith defaulted on the note of 20 June 1977.

Plaintiff sued the defendants alleging that it was entitled to possession of the boat and trailer under the two security agreements. Both plaintiff and defendant Ray moved for summary judgment under G.S. 1A-1, Rule 56. In ruling on these motions, the trial court considered the pleadings, responses to interrogatories, documents produced, stipulations of the parties and the affidavit of R. W. Hunter, Jr., plaintiff's general manager. From the trial court's judgment denying defendant Ray's motion for summary judgment and granting plaintiff's motion for summary judgment, defendant Ray appeals.

*Womble, Carlyle, Sandridge & Rice, by Francis C. Clark and W. P. Sandridge, Jr., for the plaintiff appellee.*

*John S. Curry for the defendant appellant.*

WELLS, Judge.

This case presents the problem of interpreting the term "future advance" as it is used in Section 9-307(3) of the North Carolina Uniform Commercial Code. The term is nowhere defined in the Code. G.S. 25-9-307(3) provides:

> A buyer other than a buyer in ordinary course of business (subsection (1) of this section) takes free of a security interest to the extent that it secures future advances made after the secured party acquires knowledge of the purchase, or more than 45 days after the purchase, which ever first occurs, unless made pursuant to a commitment entered into without knowledge of the purchase and before the expiration of the 45-day period.

The parties have stipulated that defendant Ray was not a buyer in the ordinary course of business and that plaintiff's second loan

to defendant Smith occurred more than forty-five days after Ray had purchased the collateral from Smith.

We have not found any cases from this State or other jurisdictions interpreting Section 9-307(3) of the Uniform Commercial Code. Subsection (3) was added to the Official Text as part of the 1972 amendments and was effective in North Carolina on 1 July 1976. 1975 N.C. Sess. Laws, ch. 862, § 7. The obvious purpose of the subsection is to define the priorities between a secured party and a purchaser other than a buyer in the ordinary course of business and to encourage the lenders and purchasers affected to shape their business practices on this basis.

> The provision proceeds on the assumption that, after an appropriate grace period, a creditor should know whether the collateral has been sold before making another advance or committing himself to one. Unless he has knowledge to the contrary, the secured party is allowed for 45 days to assume that the debtor still owns the collateral. Advances made with knowledge, or after the 45-day period, may not be secured by the sold collateral . . . .

1 Bender's Uniform Commercial Code Service § 3A.03[c], p. 202 (1979). Thus, under this subsection of the Code, in situations such as the one here a prudent lender would be well-advised to make sure that the debtor has not transferred or otherwise disposed of the collateral securing the original loan before attempting to expand the obligation covered by the security under the original security agreement's future advances clause.

We say "expand" the obligation because Section 9-307(3) is one of three subsections of the Code added by the 1972 amendments which clarify the extent to which future advances under a security agreement outrank an intervening right. These other subsections are 9-301(4) and 9-312(7). Draftmen's Statement of Reasons for 1972 Changes in Official Text, § 9-307. Section 9-301(4) provides that a "lien creditor" does not take subject to a subsequent advance unless it is given or committed without knowledge, although there is an exception protecting future advances within forty-five days after such lien regardless of knowledge. Section 9-301(4) was proposed for situations in which the intervening party is a judgment creditor because

[i]t seems unfair to make it possible for a debtor and secured party with knowledge of the judgment lien to squeeze out a judgment creditor who has successfully levied on a valuable equity subject to a security interest, by permitting later *enlargement* of the security interest by an additional advance, unless that advance was committed in advance without such knowledge . . . .

A similar problem arises where the intervening party is a buyer of the collateral subject to the security interest. While buyers must necessarily take subject to rights of secured parties, the buyer should take subject to subsequent advances only to the extent that they are given "pursuant to commitment" or within the period of 45 days after the purchase but not later than the time that the secured party acquires knowledge of the purchase. It is so proposed in Section 9-307(3) . . . . [Emphasis added.]

Draftmen's Statement of Reasons for 1972 Changes in Official Text, § 9-312, § 5. No such unfairness should normally result to a subsequent purchaser from a transaction which merely extends or continues the secured obligation without enlarging it. The other new subsection which clarifies the extent to which a future advance may outrank an intervening right, Section 9-312(7), deals with the date on which a security interest is given priority when a future advance is made, and an analysis of this subsection would not aid our understanding of the meaning of Section 9-307(3).

So the question in the instant case is the nature of the loan transaction of 20 June 1977. The parties agree that if it constituted merely an extension or renewal of plaintiff's obligation of 29 April 1976, it was not a future advance. It is also apparent from the above analysis that, to the extent the second loan may have placed an additional burden on the collateral, it must be considered a future advance. If the second loan was intended by the parties to extinguish the first obligation, the entire amount of the second obligation would be considered a future advance.

Plaintiff relies in large part on *Mid-Eastern Electronics, Inc. v. First Nat. Bank of So. Md.*, 455 F. 2d 141 (4th Cir. 1970) in support of its position that the second loan transaction constituted an extension or renewal of the original debt as a matter of law. In that case the issue was whether the creditor's failure to include a

future advances clause in its original security agreement caused it to lose its security interest in the collateral following a subsequent exchange of new notes for the old notes. The district court had concluded that new notes were future advances as a matter of law. The Fourth Circuit reversed the district court on this point, holding the intent of the parties governed and that there was no indication that the parties had intended that the new notes serve any purpose other than to renew or extend the earlier obligation. Likewise, the pre-Code law in North Carolina held that an exchange of notes was presumed not to extinguish the underlying obligation unless the parties intended that such an extinguishment occur. *Hyman v. Devereux,* 63 N.C. 624 (1869). *See also, Lancaster v. Stanfield,* 191 N.C. 340, 132 S.E. 21 (1926); *Cable v. Oil Co.,* 10 N.C. App. 569, 179 S.E. 2d 829 (1971), *cert. denied,* 278 N.C. 521, 180 S.E. 2d 863 (1971). The Code continues the same rule. G.S. 25-3-802(1)(b).

In *Mid-Eastern,* however, no new advances were made to the debtor — there was a mere exchange of notes. The debtor admitted in his deposition that the subsequent transaction constituted a "renewal" of the prior debt. The Court stated that the fact the old notes were returned to the debtor as new notes were issued did not, *in and of itself,* rebut the inference that the original indebtedness had not been extinguished. The *Mid-Eastern* Court distinguished the circumstances present in that case from the situation involved in *Safe Deposit Bank & Trust Co. v. Berman,* 393 F. 2d 401 (1st Cir. 1968), where new notes were issued which increased the debtor's obligation owed to the bank. The *Berman* Court had treated the subsequent loan as a future advance.

It therefore becomes evident that in the case *sub judice,* different factual inferences may be drawn as to the intent of the parties from the circumstances surrounding the 20 June 1977 loan. Supporting the inference that although a part of the loan was intended to pay off the 29 April 1976 obligation, the latter transaction was not intended to simply renew the April 1976 debt is the fact that it involved an actual advance of funds by the credit union which defendant Smith could have used for any purpose. Smith was not obligated to apply any of the proceeds toward the earlier obligation. The June 1977 transaction involved a note for a greater amount than the balance owing on the earlier

note and contained somewhat different terms than the previous note. A new security agreement was in fact entered into by the parties. This was not a mere exchange of notes for notes, as was the situation in *Mid-Eastern*. That defendant here used the proceeds of the 20 June 1977 note to satisfy the April 1976 obligation, which was subsequently marked "paid and satisfied," may not itself be conclusive. *Lancaster v. Stanfield, supra.* When viewed together with the other circumstances mentioned above it does, however, provide some additional evidence that the June 1977 transaction was intended to extinguish the earlier obligation.

On the other hand, there are facts present which support an inference that the 20 June 1977 transaction constituted a renewal of the earlier obligation. Defendant Smith stated that the purpose of the June 1977 loan was to "*catch up* on loans and bills" (emphasis added). One of the plaintiff's agents stated during discovery that the purpose of the loan was to "renew and refinance" the earlier obligation. Plaintiff also argues that the execution of a second security agreement with somewhat different terms was mandated by Federal law and that the amount of the second loan differed from the balance owing on the April 1976 note because the second note consolidated three loans which plaintiff had made to defendant. These arguments and explanations should be considered and weighed by the trier of fact at trial. However, on motion for summary judgment they cannot be deemed to conclusively determine the factual issue of the intent of the parties. We agree with defendant Ray, that in light of the other circumstances present in this case, the fact that the parties in their stipulations agreed that the 1977 loan "refinanced" the 1976 note involved an unfortunate and unintended use of this term by counsel for defendant Ray, which should not be deemed determinative.

Summary judgment is appropriate only where the movant has shown that no material issue of fact exists and that he is entitled to judgment as a matter of law. *Baumann v. Smith*, 298 N.C. 778, 260 S.E. 2d 626 (1979). If different material conclusions can be drawn from the evidence, summary judgment should be denied. *Durham v. Vine*, 40 N.C. App. 564, 253 S.E. 2d 316 (1979). In the present case, the circumstances surrounding the June 1977 loan transaction do not lead, as a matter of law, to a single conclusion as to the intent of the parties to either renew, enlarge or ex-

tinguish the April 1976 note. We therefore affirm the trial court's denial of defendant Ray's motion for summary judgment and reverse the granting of plaintiff's motion for summary judgment.

Affirmed in part and reversed in part.

Judges MARTIN (Robert M.) and ERWIN concur.