PARKER MARKING SYSTEMS, INC. v. DIAGRAPH-BRADLEY INDUSTRIES, INC.

No. 8512SC666

(Filed 1 April 1986)

**Contracts § 27.2— distribution agreement—method of termination—failure to maintain stated level of purchases—issues of fact**

The trial court erred in granting summary judgment for defendant manufacturer where genuine issues of material fact existed as to whether the parties intended that their distribution agreement would be terminable at will, and, if not, whether defendant had the right to terminate under the express terms of the agreement because of plaintiff's failure to maintain purchases at an agreed upon level.

APPEAL by plaintiff from *Farmer, Judge.* Judgment entered 22 April 1985 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 2 December 1985.

Defendant, Diagraph-Bradley, Inc. (hereinafter Diagraph), is a manufacturer of industrial marking equipment principally used in packaging and shipping. It distributes its products through its own branch offices and through independent distributors. Since the mid-1950's, plaintiff, Parker Marking Systems, Inc. (hereinafter Parker) has served as one of Diagraph's independent distributors. Initially, Parker distributed Diagraph's products in North Carolina, South Carolina, and Virginia. In 1969, Parker and Diagraph entered into a written franchise agreement giving Parker the exclusive right to distribute Diagraph's products in North and South Carolina, and providing for termination by either party upon 60 days notice. On 15 December 1975, Diagraph gave notice that the franchise agreement would be terminated, effective 60 days from that date, but expressed a willingness to continue the business relationship "on a basis that would be agreeable to both parties."

Before the effective date of the termination, Julian Parker, the president of Parker, met with James Brigham, the president of Diagraph, and at least one other representative of defendant. At that meeting, Parker was advised that Diagraph intended to open its own "full-line" branch office in the Carolinas. The parties agreed that Parker would continue to distribute Diagraph products for an indefinite period of time and reached certain other agreements with respect to their future business arrangement. Shortly thereafter, Diagraph sent a letter agreement to Parker confirming the new arrangement. Parker executed the new agreement and returned it to Diagraph on 22 January 1976.

The pertinent parts of the letter agreement provided that Parker "would continue as a Diagraph distributor for an indefinite period, with the understanding that" Diagraph would establish a branch office in the Carolinas. The agreement further provided that "[t]he products which Parker Marking Systems had been buying from Diagraph as set forth in the Diagraph distributor price list dated 10/75 would continue to be available at the then current distributor price, so long as the purchases would not fall below 50% of the average of the past three years, or $51,000.00. In this event, the agreement could be terminated by either party." Parker was given the right to "terminate the agreement at any time, providing 60 days written notice is received by Diagraph."

On 27 January 1982, Diagraph's counsel notified Parker by letter that the 1976 agreement would be terminated on 1 March 1982, along with Parker's right to serve as a Diagraph distributor. No reason for the termination was stated. Notwithstanding the stated termination date, Diagraph continued to honor Parker's orders until 1 May 1982.

Parker brought this action, alleging that Diagraph had breached the 1976 agreement. In its answer, Diagraph denied that any contract existed and alternatively alleged that if, in fact, there was a contract, it was terminated according to its terms or was of indefinite duration and terminable at the will of either party, and that Parker had breached the agreement, justifying Diagraph's termination of it. Both parties requested a jury trial. Subsequent to discovery, Diagraph moved for summary judgment and supported its motion with an affidavit from James Brigham

Parker Marking Systems, Inc. v. Diagraph-Bradley Industries, Inc.

and numerous exhibits attached thereto. Parker filed an affidavit of its president in opposition to the motion. In addition, depositions of Brigham and of John McKevitt, a vice-president of Diagraph, were submitted to the trial court. From an order granting Diagraph's motion for summary judgment, Parker appeals.

*Rose, Rand, Ray, Winfrey & Gregory, by Ronald E. Winfrey, for plaintiff appellant.*

*Anderson, Broadfoot, Anderson, Johnson & Anderson, by John H. Anderson, II, for defendant appellee.*

MARTIN, Judge.

Contending that genuine issues of material fact exist, plaintiff assigns error to the entry of summary judgment dismissing its claim. We conclude that there are unresolved issues of fact, the determination of which is material to the issue of whether the parties intended that the 1976 agreement be terminable at will, and if not, whether Diagraph had the right to terminate under the express terms of the agreement.

It is by now a fundamental principle of law that summary judgment should be granted only when the materials submitted to the court establish that there is no genuine issue as to a material fact and that a party is entitled to judgment as a matter of law. *Kessing v. National Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). Summary judgment is designed to eliminate the necessity for formal trials where no genuine issues of fact exist and only questions of law are involved. *Id.* Although favored where there are no disputed issues of material fact, summary judgment is not appropriate where genuine disputes exist with respect to factual issues. *Id.*

Parker contends that an issue of fact exists with respect to whether the 1976 agreement was a new agreement or was merely a modification of the 1969 franchise agreement, which by its terms was to be construed according to Illinois law. Parker argues that the 1976 agreement merely modified the earlier one and that under Illinois law, the ability of a franchisor to terminate a franchise agreement is restricted. We reject this argument at the outset. The 1969 franchise agreement was clearly terminated, in compliance with a termination provision contained therein, by

Diagraph's 15 December 1975 letter. The same letter expressed a willingness to negotiate a new agreement. The letter agreement signed by Parker's president on 22 January 1976 and characterized by him as "the new agreement," was the product of those negotiations and is the only contract involved in this dispute.

The rights of the parties with respect to the 1976 agreement are governed by the provisions of the Uniform Commercial Code, Article 2—Sales, as adopted in North Carolina. G.S. 25-1-101 *et seq.* The article provides special rules governing the rights of parties to contract for the sale of goods and covers contracts to sell goods in the future, G.S. 25-2-105 and 106, based on buyer's requirements, G.S. 25-2-306, even where the price is to be fixed later, G.S. 25-2-305, and the contract calls for successive performances, G.S. 25-2-309.

Under the common law in North Carolina, a contract calling for successive and continuing performances which was indefinite in duration was terminable at will and could be terminated by either party upon giving reasonable notice. *Fulghum v. Selma*, 238 N.C. 100, 76 S.E. 2d 368 (1953); *East Coast Development Corp. v. Alderman-250 Corp.*, 30 N.C. App. 598, 228 S.E. 2d 72 (1976). The common law rule is carried forward by G.S. 25-2-309 which provides:

> Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but *unless otherwise agreed* may be terminable at any time by either party.

G.S. 25-2-309(2) (emphasis added). The Uniform Commercial Code specifically emphasizes the ability of the parties to fix by agreement their rights to terminate a contract for the sale of goods; "termination" is defined as the event which "occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach." G.S. 25-2-106(3).

The 1976 letter agreement expressly states that Parker would continue as a Diagraph distributor for "an indefinite period." It contains no fixed period of duration, and under general contract law, is of indefinite duration and terminable at the will of either party. *Citrini v. Goodwin*, 68 N.C. App. 391, 315 S.E. 2d 354

(1984). However, under G.S. 25-2-309(2), we must look further to determine if there is any genuine issue of fact with respect to whether the parties "otherwise agreed" concerning Diagraph's right to terminate the contract at any time.

The Code defines "agreement" as the "bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance." G.S. 25-1-201(3). The Code further provides:

> The express terms of the agreement and any such course of performance, as well as any course of dealing and usage of trade, shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance and course of performance shall control both course of dealing and usage of trade (G.S. 25-1-205).

G.S. 25-2-208(2) (1985 Cum. Supp).

An agreement is construed according to the intent of the parties, "which is ascertained by the subject matter of the contract, the language used, the purpose sought and the situation of the parties at the time." *Pike v. Wachovia Bank and Trust Co.*, 274 N.C. 1, 11, 161 S.E. 2d 453, 462 (1968). While clear and unambiguous contracts may be interpreted by the court as a matter of law, if the language used by the parties is ambiguous and their intention unclear, interpretation of the contract is for the jury under proper instructions from the court. *Cleland v. Children's Home, Inc.*, 64 N.C. App. 153, 306 S.E. 2d 587 (1983). Extrinsic evidence relating to the agreement is competent to show the intentions of the parties and to clarify the terms of the contract. *Whitten v. Bob King's AMC/Jeep, Inc.*, 30 N.C. App. 161, 226 S.E. 2d 530 (1976), *rev'd on other grounds*, 292 N.C. 84, 231 S.E. 2d 891 (1977).

While stating that Parker would continue as a Diagraph distributor indefinitely, the 1976 letter agreement went on to provide that Diagraph would continue to sell its products to Parker for so long as Parker's purchases did not fall below $51,000.00, in which event either party was given a right of termination. In a succeeding section, the right to terminate at any time, without

regard to the amount of Parker's purchases, was reserved only to Parker. Thus, the terms of the written contract are unclear and ambiguous as to whether the contract was of indefinite duration and terminable at the will of either party, or whether Diagraph's right to terminate was conditioned on Parker's failure to meet the minimum purchase levels.

The affidavits submitted by the parties are conflicting as to this issue. Mr. Brigham states, in his affidavit, that a main point of the 1976 agreement was that Parker's right to continue as a Diagraph distributor was for an indefinite period and that the duration of the agreement was not otherwise specified in any manner. On the other hand, Mr. Parker stated that the parties agreed that Parker's rights as a distributor could not be terminated so long as Parker made the required purchases. Thus, there is a genuine issue of material fact as to whether the parties "otherwise agreed" to limit Diagraph's right to terminate the 1976 agreement. If the parties agreed that, although the 1976 agreement was indefinite in duration, Diagraph would be entitled to terminate only in the event Parker failed to meet its purchase requirements, the agreement was not terminable at will by Diagraph. *See Hoover v. Kleer-Pak*, 33 N.C. App. 661, 236 S.E. 2d 386, *disc. rev. denied*, 293 N.C. 360, 237 S.E. 2d 848 (1977); *Besco, Inc. v. Alpha Portland Cement Co.*, 619 F. 2d 447 (5th Cir. 1980); *Liberty Indus. Sales, Inc. v. Marshall Steel Co.*, 272 F. 2d 605 (7th Cir. 1959).

Diagraph contends that even if the contract was not terminable at will, it had the right to terminate the contract because Parker's purchases fell below 50% of the average of the past three years preceding the 1976 agreement, or $51,000. As to this issue, we find another genuine factual dispute. Diagraph's forecast of evidence in support of this contention shows that the amount of Parker's purchases were adjusted to reflect "inflationary distributor price increases" so that actual purchases were reduced by the inflationary percentage to arrive at amounts below the agreed upon level. At no point during the period from 1976 through 31 December 1981 did Parker's actual purchases fall below the level specified in the 1976 agreement. Parker offered evidence tending to show that adjustment of purchase figures to account for inflation had never been discussed between the parties, was not a common practice in the industry, and had not ever

been the practice between Parker and Diagraph. Aside from the assertions of each party, there is nothing in the record to indicate whether adjustment of purchases to account for inflation in order to determine whether minimum requirements had been met was within the contemplation of the parties at the time they entered the agreement. Issues relating to methods or practices in business are ordinarily questions for the factfinder, *Superior Foods, Inc. v. Harris-Teeter Super Markets*, 288 N.C. 213, 217 S.E. 2d 566 (1975), as are questions involving subjective issues such as the contemplation and intent of parties to a contract. *See Feibus & Co., Inc. v. Godley Construction Co., Inc.*, 301 N.C. 294, 271 S.E. 2d 385 (1980). Thus, a genuine issue of fact exists as to the right of Diagraph to terminate the agreement for Parker's failure to maintain purchases at the agreed upon level.

Reversed and remanded.

Chief Judge HEDRICK and Judge EAGLES concur.