LARRY N. HIGGINS v. JO ANNE W. HIGGINS

AND

JO ANNE W. HIGGINS v. LARRY N. HIGGINS

No. 8618DC1058

(Filed 4 August 1987)

**Husband and Wife § 12— separation agreement—resumption of sexual relations— provisions contingent on living separate and apart—invalidated**

The trial court properly granted summary judgment in favor of plaintiff wife on her complaint for an equitable distribution as to the marital residence where the parties had executed a separation agreement in which plaintiff wife

Higgins v. Higgins

agreed to transfer her interest in the marital home to defendant husband if they had lived continuously separate and apart for one year, and there was undisputed evidence that plaintiff and defendant engaged in sexual relations during the one year period. Sexual relations between spouses separated less than one year invalidate those obligations of the parties, pursuant to a separation agreement, that are contingent upon the requirement that the parties "live continuously separate and apart" for one year. N.C.G.S. § 50-6.

Judge ORR dissenting.

APPEAL by defendant from *Lowe, Judge.* Judgment entered 26 May 1984 in District Court, GUILFORD County. Heard in the Court of Appeals 10 March 1987.

*Hatfield & Hatfield, by Kathryn K. Hatfield, attorney for Jo Anne W. Higgins.*

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Charles A. Lloyd and Martha E. Johnston, attorneys for Larry N. Higgins.*

JOHNSON, Judge.

Plaintiff-wife and defendant-husband executed a separation agreement on 13 December 1983 which purported, in part, to distribute the marital property owned by the parties, pursuant to N.C.G.S. sec. 50-20(d). Provision four of the agreement provided that:

It is agreed that the residence and lot located at 3207 Edgewater Drive, Greensboro, North Carolina, shall remain titled in the name of Larry N. Higgins and Jo Anne W. Higgins for a period of one year from the date of this agreement and it is agreed that *if the parties have lived continuously separate and apart for that full period* that in that event Mrs. Higgins shall transfer her interest in the residence and lot to Mr. Higgins as part of property settlement as provided therein. Mr. Higgins and Mrs. Higgins have agreed upon a division of all their personal property and Mrs. Higgins agrees to remove all the personal property that she shall be entitled to from the residence located at 3207 Edgewater Drive within a reasonable time after the execution of this agreement.

In accordance with provision four, plaintiff moved out of the marital residence shortly after signing the separation agreement. In

the one-year period following execution of the agreement, plaintiff and defendant attended two car shows together, one in January 1984 and the other in March 1984. At each of the shows, the parties shared a hotel room for four days. Plaintiff also attended the funeral of defendant's brother with defendant in March 1984, driving to and from the funeral with defendant and sharing the same room with him for two nights at his parent's home. In February 1984, the parties took their daughter to the circus, and in March 1984, plaintiff took defendant to and from the hospital when defendant underwent minor surgery. Plaintiff testified that while participating in these activities the parties engaged in several acts of sexual intercourse. Defendant testified that he recalls engaging in only one act of sexual intercourse with the plaintiff during the time in question.

In December 1984, one year after execution of the separation agreement, defendant asked plaintiff to transfer her interest in the marital residence to him, in conformity with provision four. When she refused to do so, defendant sought a declaratory judgment from the trial court, holding provision four to be valid and ordering plaintiff to comply with the terms of the provision. In response, plaintiff brought suit against defendant seeking absolute divorce and equitable distribution of the marital residence and certain personal property, pursuant to N.C.G.S. sec. 50-20.

The parties consolidated their actions for a hearing by the district court. At the hearing, plaintiff orally moved for summary judgment contending that the sexual relations between her and defendant during the separation period ended her legal obligation to transfer her interest in the residence to defendant, and entitled her to summary judgment on this issue, as a matter of law. The trial court accepted plaintiff's argument, granted her motion for summary judgment, and dismissed defendant's action.

From the trial court's judgment, defendant appeals.

The sole issue on appeal is whether provision four was unambiguous, permitting the trial court to grant summary judgment for plaintiff on the issue of the provision's enforceability, as a matter of law.

"Summary judgment is proper when there is no genuine issue as to any material fact." G.S. 1A-1, Rule 56(e) (1983). It is a

drastic remedy not to be granted "unless it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." *Dendy v. Watkins*, 288 N.C. 447, 452, 219 S.E. 2d 214, 217 (1975). The burden is on the moving party to establish the lack of any triable issue of fact. Summary judgment should be denied "[i]f different material conclusions can be drawn from the evidence." *Credit Union v. Smith*, 45 N.C. App. 432, 437, 263 S.E. 2d 319, 322 (1980).

The portion of provision four at issue states:

[I]t is agreed that if the parties have lived continuously separate and apart for that full period [of one year] that in that event Mrs. Higgins shall transfer her interest in the residence and lot to Mr. Higgins as a part of [the] property settlement as provided herein.

Plaintiff contends that by engaging in sexual relations during the one-year separation period, she and defendant failed to live "continuously separate and apart for the full period" as required by provision four. Underlying plaintiff's contention is the premise that the phrase "live continuously separate and apart" must be given its legal definition, derived from N.C.G.S. sec. 50-6.

N.C.G.S. sec. 50-6 is a divorce statute which permits the granting of absolute divorce when a husband and wife have *lived separate and apart for one year*. Prior cases have held that under N.C.G.S. sec. 50-6 this separation requirement will not be met if during the one-year period the couple engages in sexual relations. *Ledford v. Ledford*, 49 N.C. App. 226, 229-30, 271 S.E. 2d 393, 396-97 (1980). *See also Murphy v. Murphy*, 295 N.C. 390, 245 S.E. 2d 693 (1978); *In re Estate of Adamee*, 291 N.C. 386, 230 S.E. 2d 541 (1976). Undisputed evidence that plaintiff and defendant engaged in sexual relations during the one-year period was before the trial court; consequently, if the legal definition derived from N.C.G.S. sec. 50-6 applies, summary judgment for plaintiff on this issue would be proper.

Generally, a separation agreement is construed by the same rules of construction as an ordinary contract. *See Turner v. Turner*, 242 N.C. 533, 89 S.E. 2d 245 (1955). Two basic principles of contract construction are (1) "that a contract must be construed as a whole, considering each clause and word with reference to all

other provisions and giving effect to each whenever possible," and (2) "that the common or normal meaning of language will be given to the words of a contract" absent evidence disclosing an intent that they be given their technical or legal meaning. *Marcoin, Inc. v. McDaniel*, 70 N.C. App. 498, 504, 320 S.E. 2d 892, 897 (1984), *disc. rev. denied*, 312 N.C. 797, 325 S.E. 2d 631 (1985).

Once these contract principles are applied, "[t]he general rule is that where the entire contract is in writing and the intention of the parties is to be gathered from it, the effect of the instrument is a question of law, but if the terms of the agreement are equivocal or susceptible of explanation by extrinsic evidence the jury under proper instructions may determine the meaning of the language employed." *Goodyear v. Goodyear*, 257 N.C. 374, 380, 126 S.E. 2d 113, 118 (1962); *Owens v. Little*, 13 N.C. App. 484, 186 S.E. 2d 182 (1972).

At issue is the effect of the language in the separation agreement "if the parties have lived continuously separate and apart" on Mrs. Higgins' ownership interest in the marital home considering that the parties had sexual relations within a year of entering into the agreement. We have previously held that, as a matter of law, sexual relations between spouses during the separation period negates the requirement under G.S. 50-6 that the parties live separate and apart for purposes of an absolute divorce. *Ledford, supra.* The case *sub judice* involves the effect of sexual relations on a provision in a separation agreement involving a property settlement, and not on absolute divorce. The legal significance given to sexual relations between separated spouses in light of the "live continuously separate and apart" language in G.S. sec. 50-6 — i.e. that sexual relations during the one-year separation period means that the parties are no longer living separate and apart for purposes of absolute divorce — is persuasive in determining the legal significance of the same or similar language on a separation agreement where the parties have engaged in sexual relations while separated for less than one year. We now hold that sexual relations between spouses separated for less than one year invalidates those obligations of the parties, pursuant to a separation agreement, that are contingent upon the requirement that the parties "live continuously separate and apart" for one year.

We find nothing equivocal or ambiguous about the language in either paragraph four or elsewhere in the separation agreement regarding the "lived continuously separate and apart" provision. The separation agreement is contained entirely in a single writing, and the record before this Court does not show evidence of the parties' intent outside of that writing. The effect of the separation provision on the parties' property settlement is clear; if the parties do not live continuously separate and apart for one year, then Mrs. Higgins is not obligated to transfer her interest in the marital residence to Mr. Higgins. The parties in the case *sub judice* admitted to having sexual relations during the one-year separation period. Such sexual relations, as a matter of law, caused the parties to no longer be living separate and apart, thereby invalidating Mrs. Higgins' obligation under the separation agreement to transfer her interest in the marital residence to Mr. Higgins.

Because the evidence at trial tended to show that no genuine issue of material fact existed as to whether the parties engaged in sexual relations during the one-year separation period as proscribed by their separation agreement, we hold that the trial court properly granted summary judgment in favor of Mrs. Higgins on her complaint for an equitable distribution as to the marital residence.

No error.

Judge EAGLES concurs.

Judge ORR dissents.

Judge ORR dissenting.

I respectfully disagree with the conclusions reached by the majority opinion and therefore, dissent.

A critical basis of the majority opinion is that the document in question is a "separation agreement." In fact, however, the document is captioned "Agreement *and* Deed of Separation." (Emphasis added.) In paragraph 21 of this agreement, it states:

Pursuant to the provision of G.S. 50-20(d), the parties have agreed that the above division constitutes a distribution of

marital property and such distribution shall be deemed to be equitable as between them. That except for the distribution in the manner provided for in this agreement, each of the parties hereto does hereby irrevocably and forever waive any and all rights whatsoever to a distribution of the property owned by the said parties, whether pursuant to Section 20 of Chapter 50 of the North Carolina General Statutes, or its equivalent, in the State of North Carolina or in any other state.

The paragraph in contention in the case *sub judice* deals with the transfer of the wife's ownership interest in the marital residence, thereby clearly being property subject to the equitable distribution laws of this state. N.C.G.S. § 50-20(d) states:

Before, during or after marriage the parties may by written agreement, duly executed and acknowledged in accordance with the provisions of G.S. 52-10 and 52-10.1, or by a written agreement valid in the jurisdiction where executed, provide for distribution of the marital property in a manner deemed by the parties to be equitable and the agreement shall be binding on the parties.

The agreement in question was (1) in writing; (2) duly executed and acknowledged in accordance with the provision of N.C.G.S. § 52-10 by both parties; and (3) provided for distribution of the marital property in a manner deemed by the parties to be equitable.

I consider this agreement to meet all the requirements of a N.C.G.S. § 50-20(d) agreement and, therefore, subject to rules applicable to this specific type of agreement.

If, as contended in this dissent, this is a N.C.G.S. § 50-20(d) agreement, then the isolated act or acts of sexual intercourse between the parties does not automatically void the provision requiring the wife to transfer her interest in the marital home upon "living separate and apart for one year."

As stated in *Love v. Mewborn*, 79 N.C. App. 465, 339 S.E. 2d 487, *disc. rev. denied*, 317 N.C. 704, 347 S.E. 2d 43 (1986): "property settlements may be executed before, during or after marriage and are not necessarily terminated by reconciliation." 79 N.C. App. at 466, 339 S.E. 2d at 488. In *Love*, a single act of sexual

relations during a twenty-four hour reconciliation period was held not to void alimony payments agreed to in a "separation agreement and property settlement." In addition, this Court in *Buffington v. Buffington*, 69 N.C. App. 483, 317 S.E. 2d 97 (1984), has stated "that the public policy of our state, as expressed by G.S. § 50-20(d), permits spouses to execute a property settlement at any time, regardless of whether they separate immediately thereafter or not." 69 N.C. App. at 488, 317 S.E. 2d at 100. In *Buffington*, the defendant wife contended that the separation agreement executed by her was void solely on the grounds that she continued to live with the plaintiff for eighteen days after the agreement was signed. Our Court held that she could not avoid the separation agreement under those conditions.

Finally, the majority's conclusion that the resumption of sexual relations, as a matter of law, caused the parties to "no longer be living separate and apart" is, in my opinion, incorrect. As previously pointed out, resumption of sexual relations does not, as a matter of law, void a N.C.G.S. § 50-20(d) agreement. Therefore, to conclude that the parties "no longer live separate and apart" because of the resumption of sexual relations, is to give the phrase a meaning beyond the context of this agreement and to affix to it a meaning reserved for situations other than a property settlement under N.C.G.S. § 50-20(d). There is no basis in our statutes or case law to conclude that the incorporation of the phrase "live separate and apart for one year" into a N.C.G.S. § 50-20(d) agreement means that sexual relations will result in the conclusion, as a matter of law, that the parties no longer live separate and apart. The intent of the parties as to the application of this phrase in their agreement is instead a question to be decided by the trier of fact. Summary judgment was therefore, in my opinion, improvidently granted.