LARRY N. HIGGINS v. JOANNE W. HIGGINS AND JOANNE W. HIGGINS v.
LARRY N. HIGGINS

No. 486A87

(Filed 3 February 1988)

**Husband and Wife § 12— separation agreement—property settlement—living separate and apart—effect of sexual relations**

A provision of a separation agreement which required the wife to transfer to the husband her interest in the marital residence if the parties "lived continuously separate and apart" for a full year after the date of the agreement was not enforceable where the parties engaged in sexual intercourse during the one-year period, since a husband and wife do not live "separate and apart" if they have sexual relations.

Justice FRYE concurring in result.

Justice MARTIN joins in this concurring opinion.

Justice MEYER dissenting.

Justice WHICHARD joins in this dissenting opinion.

Justice WHICHARD dissenting.

APPEAL by Larry N. Higgins pursuant to N.C.G.S. § 7A-30(2) from an opinion by a divided panel of the Court of Appeals at 86 N.C. App. 513, 358 S.E. 2d 553 (1987). Heard in the Supreme Court 9 December 1987.

Appellant-husband and appellee-wife were married on 10 March 1979 and separated in November of 1983. The parties executed a separation agreement on 13 December 1983 which purported, in part, to distribute the marital property owned by the parties pursuant to N.C.G.S. § 50-20(d).

The basis of the dispute before this Court concerns Paragraph 4 of this "Agreement and Deed of Separation," which reads in part as follows:

It is agreed that the residence and lot located at 3207 Edgewater Drive, Greensboro, North Carolina, shall remain titled in the name of Larry N. Higgins and JoAnne Higgins for a period of one year from the date of this Agreement and it is agreed that *if the parties have lived continuously separate and apart for that full period* that in that event Mrs. Higgins shall transfer her interest in the residence and lot to

Mr. Higgins as part of property settlement as provided herein. Mr. Higgins and Mrs. Higgins have agreed upon a division of all their personal property and Mrs. Higgins agrees to remove all the personal property that she shall be entitled to from the residence located at 3207 Edgewater Drive within a reasonable time after execution of this agreement. (Emphasis added.)

This agreement also contained mutual releases of property rights and a waiver of equitable distribution.

In December 1984, one year after the execution of the separation agreement, the appellant asked the appellee to transfer her interest in the marital residence to him, in conformity with the fourth paragraph. When she refused to do so, he brought an action for a declaratory judgment, asking the court to order the appellee to comply with the terms of paragraph four. In response, the appellee brought an action for absolute divorce and for equitable distribution of the marital residence and certain personal property. The two actions were consolidated for hearing and Mrs. Higgins made a motion for summary judgment.

The papers submitted by the appellee at the hearing on the motion for summary judgment showed the following: The appellee moved out of the marital residence upon execution of the separation agreement and the parties ceased living together at that time. However, during the one year period following execution of this agreement, the parties traveled to Tennessee and Florida together to attend car and t-shirt shows. At each of the shows, the parties shared a motel room for up to four days. In each of these instances, the parties engaged in one or more acts of sexual intercourse. Appellee also attended the funeral of appellant's brother with appellant in March 1984, driving to and from the funeral with appellant and sharing a room with him on that occasion for two nights.

Over the course of the remainder of 1984, the appellant and the appellee attended several events together. They took their daughter to the circus in February of 1984 and the appellee took the appellant to the hospital for minor surgery in March of the same year. During the course of these events, the parties engaged in several acts of sexual intercourse.

The appellant, while disputing the number of times, admitted engaging in intercourse with his wife during this time period. The parties also spent at least two nights together in the former marital residence during their one-year separation.

The district court granted the appellee's motion for summary judgment and dismissed the appellant's action. The Court of Appeals affirmed with a dissent. Mr. Higgins appealed to this Court.

*Hatfield & Hatfield, by Kathryn K. Hatfield, for plaintiff-appellee.*

*McNairy, Clifford, Clendenin & Parks, by Joy R. Parks, for defendant appellant.*

WEBB, Justice.

The resolution of this appeal depends on the interpretation of the words of the agreement "if the parties have lived continuously separate and apart for that full period" (one year). It is undisputed that the parties engaged in sexual intercourse during that period. If these words are not ambiguous and to live separate and apart means the parties may not engage in sexual intercourse during that period, summary judgment was properly granted for the appellee. We believe that we are required to hold under *Murphy v. Murphy*, 295 N.C. 390, 245 S.E. 2d 693 (1978) and *State v. Gossett*, 203 N.C. 641, 166 S.E. 754 (1932), that the words are not ambiguous and the parties did not live continuously separate and apart during the year after the agreement was signed. In *Murphy*, the plaintiff brought an action for divorce on the ground of one year's separation. A separation agreement had been signed by the parties and the defendant brought a cross action to set it aside. The cross action was tried first. We held it was error for the district court to charge the jury that it took more than sexual intercourse for the parties to resume the marital relationship. In *Gossett*, the defendant was prosecuted for nonsupport of his wife. He defended on the ground that he and his wife had signed a separation agreement which relieved him of the duty to support her. This Court found no error in a charge in which the jury was told that if they found the parties entered into an agreement in which they agreed to live separate and apart and the defendant visited his wife on several occasions and had intercourse with her, they should treat the separation agreement as if it were of no validity.

*Murphy* and *Gossett* hold that sexual intercourse is all it takes to void an agreement in which the parties agree to live separate and apart. We believe these cases hold there is a precise meaning to "living separate and apart" and a husband and wife do not live separate and apart if they have sexual relations. The words as used in the separation agreement in this case are not ambiguous. The contingency upon which the husband was to receive the wife's interest in the marital residence did not occur. The wife was entitled to summary judgment in her favor.

The appellant contends and the dissents in the Court of Appeals and this Court say that this is an agreement drawn pursuant to N.C.G.S. § 50-20(d) which allows an agreement dividing property during the marriage. For that reason, says the appellant, the agreement in this case is enforceable although the parties had sexual relations within one year of the signing of the agreement. The appellant relies on *Love v. Mewborn,* 79 N.C. App. 465, 339 S.E. 2d 487, *disc. rev. denied,* 317 N.C. 704, 347 S.E. 2d 43 (1986) and *Buffington v. Buffington,* 69 N.C. App. 483, 317 S.E. 2d 97 (1984). We believe our decision in this case is consistent with N.C.G.S. § 50-20(d) as well as *Love* and *Buffington.* N.C.G.S. § 50-20(d) provides that married persons may provide for division of marital property while they are cohabiting. *Love* and *Buffington* hold that such agreements are enforceable under the statute. We do not hold in this case that such an agreement is unenforceable. The terms of the agreement in this case provide that for the defendant to receive the marital home the parties must live separate and apart for one year after the parties separate. They did not do this and under the terms of the agreement the appellant is not entitled to have the house conveyed to him. We do not hold that *Murphy* governs and the separation agreement is void. We do hold that at the time the agreement was executed *Murphy* and *Gossett* had defined "to live separate and apart" in such a way that the words meant that a husband and wife could not have intercourse if they were to live separate and apart. We hold the separation agreement should be enforced according to the meaning of these words.

The dissents would apply a subjective test to determine the intent of the parties at the time the separation agreement was made. *See* 1 E. Farnsworth, *Contracts* § 7.9 (1982) for a discussion of the objective and subjective theories of assent. The dissents

would have us attempt to search for the meaning the parties gave to the words regardless of the understanding which is normally given to them. In this case we believe we should use an objective test. The words "live continuously separate and apart" have a definite meaning. Larry Higgins' attorney could have told him the meaning of the words at the time the agreement was signed. A party to a contract should not be allowed to say he gave a different meaning to words which are not ambiguous.

We are advertent to N.C.G.S. § 52-10.2 which overrules *Murphy* and *Love*. The effective date of that statute is 1 October 1987. We did not consider it in the resolution of this case.

The decision of the Court of Appeals is

Affirmed.

Justice FRYE concurring in result.

This is a simple case. The parties to this lawsuit, husband and wife, entered into a separation agreement which provided, *inter alia*, that their residence should remain titled in their names for a period of one year from the date of the agreement and further provided "that if the parties have lived continuously separate and apart for that full period" the wife would transfer her interest in the residence to her husband as part of the property settlement. This agreement was executed on 13 December 1983. During the one year following execution of the agreement, the parties traveled to Tennessee and Florida, sharing a motel room for up to four days. In each of these instances, the parties engaged in one or more acts of sexual intercourse. They spent at least two nights together in the former marital residence, two other nights together away from the residence, and engaged in several acts of sexual intercourse on other occasions. The husband now seeks enforcement of that portion of the separation agreement requiring the wife to transfer her interest in the property to him. In order to do so, he must establish that they "have lived continuously separate and apart for that full period" of one year. The district court granted the wife's motion for summary judgment and the Court of Appeals affirmed.

The question before the trial court, the Court of Appeals and this Court is whether, admitting the facts as stated above, the

husband can prove that he and his former spouse "lived continuously separate and apart for that full period" as that language was used in their separation agreement.

Since this Court's famous (or infamous) decision in *Murphy v. Murphy*, 295 N.C. 390, 245 S.E. 2d 693 (1978), every divorce lawyer worth his salt has known that the resumption of even casual sexual relations between husband and wife during the period of separation meant that the parties were not living "continuously separate and apart" as that term is used in separation agreements. This language had a clear and unambiguous meaning in North Carolina at the time this agreement was executed and therefore it is unnecessary to have testimony of the parties as to what each of them intended when this language was used.

The dissent makes much of the fact that leading commentators have criticized the rule of *Murphy* and that the rule of *Murphy* has now been effectively overruled by recent action of the General Assembly. Such reliance is misplaced, however, since the meaning of the language in 1983 was clear, irrespective of whether the commentators liked it or not. Likewise, the fact that the separation agreement was executed after the enactment of the marital property act is also not controlling. The fact that a separation agreement may be entered into before, during or after the dissolution of a marriage does not prevent the parties from agreeing that certain property will be transferred only if the parties live "continuously separate and apart" for the stated period of time. Here, the husband agreed to a contract which provided for the transfer of the property only if a condition precedent was met. This condition precedent has not been met and the husband is not entitled to a conveyance under this separation agreement. That is the only question that was decided by each of the courts below and each of them decided it correctly. I therefore join the majority in voting to affirm.

In view of the dissenting opinions, I would note that this Court has not resurrected *Murphy v. Murphy*, 295 N.C. 390, 245 S.E. 2d 693, but simply recognized the absence of any ambiguity in the meaning of the clause in question at the time of the execution of the separation agreement.

Justice MARTIN joins in this concurring opinion.

Justice MEYER dissenting.

I concur in all respects with the dissent of Justice Whichard but wish to add my observations concerning what I perceive to be the majority's erroneous application of the rules governing summary judgment.

The majority concludes that certain language from the separation agreement in question, specifically the phrase "if the parties have lived continuously separate and apart for that full period" (one year), is unambiguous and subject to but one reasonable interpretation. For this case at least, says the majority, this interpretation is that a husband and wife live "continuously separate and apart" only if they do not engage in even a single act of sexual intercourse. Because it is admitted that the parties had sexual intercourse on at least one occasion during the period of time in question, continues the majority, the trial court's order granting the wife's motion for summary judgment was proper. In fact, the disputed language from the separation agreement is perfectly susceptible to at least two different and plausible meanings—either of which a jury could and should have been allowed to find as reflecting the intent of the parties when they entered into the contract of separation. In my opinion, the majority has clearly erred in affirming summary judgment for the wife.

Rule 56(c) of the North Carolina Rules of Civil Procedure provides that summary judgment will be granted only where a forecast of the evidence shows that there is *no* genuine issue as to any material fact and that a party is entitled to judgment as a matter of law. *Lowe v. Bradford,* 305 N.C. 366, 289 S.E. 2d 363 (1982); N.C.G.S. § 1A-1, Rule 56(c) (1983). The party moving for summary judgment must establish the lack of *any* triable issue, and all inferences of fact from the evidence proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion. *Morrison v. Sears, Roebuck & Co.,* 319 N.C. 298, 354 S.E. 2d 495 (1987). Summary judgment is a harsh and drastic remedy not to be granted "unless it is *perfectly clear* that *no* issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." *Dendy v. Watkins,* 288 N.C. 447, 452, 219 S.E. 2d 214, 217 (1975) (emphasis added). Most importantly, a motion for summary judgment should be denied "if different material conclusions can be drawn from the evidence."

*Credit Union v. Smith*, 45 N.C. App. 432, 437, 263 S.E. 2d 319, 322 (1980).

Notwithstanding the majority's conclusion to the contrary, there is indeed a genuine issue of material fact in the case at bar —namely, just what this husband and wife intended by their use of the phrase "lived continuously separate and apart" in paragraph four of the disputed separation agreement. The majority here concludes incorrectly that the contested language could *only* be interpreted to mean that husband and wife must refrain from even a single act of sexual intercourse in order for the transfer of interest under paragraph four to go forward. In fact, the language used here by the parties is ambiguous. It could no doubt just as easily be found, for example, that these parties intended the language to mean that, during the year in question, they must not resume living together in the same household as husband and wife. In that event, the property would go to the husband. Where the language in question is unclear and the parties' intentions are in doubt, interpretation of an agreement is for the jury under proper instructions from the court. *Parker Marking Systems, Inc. v. Diagraph-Bradley Industries, Inc.*, 80 N.C. App. 177, 341 S.E. 2d 92, *disc. rev. denied*, 317 N.C. 336, 346 S.E. 2d 502 (1986).

This case is for the jury and entry of summary judgment for the wife was improper.

Justice WHICHARD joins in this dissenting opinion.

Justice WHICHARD dissenting.

The majority bases its holding on *Murphy v. Murphy*, 295 N.C. 390, 245 S.E. 2d 693 (1978), in which this Court held that "sexual intercourse between a husband and wife after the execution of a separation agreement avoids the contract." *Murphy*, 295 N.C. at 397, 245 S.E. 2d at 698. The decision in *Murphy* has been uniformly and severely criticized. An early critique stated:

> This decision is supported neither by reason nor by precedent. It directly conflicts with a desirable policy of preserving marriages by encouraging reconciliation attempts between separated spouses who have made a separation agreement, it is a much narrower holding than the facts of

the case demanded, and it inexplicably rejects case law developed by the court of appeals.

*Survey of Developments in North Carolina Law, 1978*, 57 N.C.L. Rev. 827, 1096 (1979). Professor Sally Sharp, a leading commentator on North Carolina family law, has observed:

> It is impossible, and useless, to speculate about what prompted the supreme court to rule as it did in *Murphy*. Certainly it would have been difficult for the court to have implied an intent to reconcile and resume marital relations from isolated acts of sexual intercourse. An *attempt* to reconcile could well be implied, but hardly a fully formed intent. The result of the holding is that parties (or at least one party) will be penalized for trying to reconcile if he or she is unsuccessful in that attempt. The conclusion that this result tends to inhibit efforts to reconcile seems inescapable.
>
> . . . .
>
> . . . [T]he principle that single acts of intercourse will constitute a reconciliation and therefore rescind a valid separation agreement should be given serious reconsideration. Neither the interest of the state in preserving marriage nor the interests of the parties in relying upon their contract is well served by the present rule.

S. Sharp, *Divorce and the Third Party: Spousal Support, Private Agreements, and the State*, 59 N.C.L. Rev. 819, 841-43 (1981). *See also* S. Sharp, *The Partnership Ideal: The Development of Equitable Distribution in North Carolina*, 65 N.C.L. Rev. 195, 204-05 n.52 (1987) (refers to "the Draconian effect of the *Murphy* rule" and notes that "[t]he issue . . . remains a serious problem"); *Note, Domestic Relations—Enforcement of Contractual Separation Agreements by Specific Performance—Moore v. Moore*, 16 Wake Forest L. Rev. 117 (1980) ("[W]hile the isolated-acts test serves the goal of judicial efficiency, it undermines the goal of judicial integrity.").

Perhaps in response to these critiques of *Murphy*, the General Assembly provided in the Equitable Distribution Act that parties may make a written agreement providing for distribution of their property "[b]efore, during or after marriage." N.C.G.S. § 50-20(d) (1987). The Court of Appeals has interpreted the effect

of this section to be that spouses may now execute a property settlement at any time, without separating afterwards, *Buffington v. Buffington*, 69 N.C. App. 483, 317 S.E. 2d 97 (1984), and that such settlements are not necessarily terminated by reconciliation, *Love v. Mewborn*, 79 N.C. App. 465, 339 S.E. 2d 487, *disc. rev. denied*, 317 N.C. 704, 347 S.E. 2d 43 (1986). In my view those cases were correctly decided and accurately reflect both legislative intent in the enactment of N.C.G.S. § 50-20(d) and sound public policy. If spouses may make an agreement for a property settlement during marriage, it follows that after execution of the agreement, they may continue to live together, or have sexual relations while living apart, without voiding the agreement.

The separation agreement here was entered into subsequent to the effective date of N.C.G.S. § 50-20(d). The agreement recites in paragraph 21 that it constitutes a distribution of marital property pursuant to that statute. Therefore, it was not voided by the parties' episodic sexual relations.

If *Murphy* governs, as the majority holds, the agreement is void, and the language used therein is immaterial. The majority thus is incorrect, under its view of the law, in stating that "[t]he resolution of this appeal depends on the interpretation of the words of the agreement 'if the parties have lived continuously separate and apart for that full [one year] period.'" The language of a void agreement is immaterial, so questions of interpretation do not arise.

While *Murphy* established a clear legal consequence for even a single act of sexual intercourse after entering a separation agreement—a consequence now removed by the enactment of N.C.G.S. § 50-20(d)—it did not give singular semantic or legal significance, divorced from context and intent, to the words "lived continuously separate and apart." The majority goes beyond the actual holding in *Murphy* in holding that it did.

The spouses here testified to their differing interpretations of the phrase "lived continuously separate and apart" in the context of their separation agreement. The wife testified:

It meant that in a year's time if we lived continuously separate and apart that I would sign the house over. At the time I . . . signed the house over I thought that [my husband]

and I would divide the interest in the house as far as my marital interest even though it was not stated. That's how I interpreted this paragraph. . . . If we lived continuously separate and apart. That meant no contact whatsoever. That I would sign the house over and I would be given my marital interest in the property. . . . I was obligated to turn the house over if we had no contact as far as having sex, going anywhere together appearing as husband and wife. If we had had no contact, if he went his separate way, I went my separate way, we did not talk about going back together, then I was going to sign [over] the house and I thought I would be getting my part of the house.

She further testified that she thought that if she and her husband had "sexual relations or even spen[t] the night together . . . , it voided [the agreement]. That was, to [her], going back and living as husband and wife." The husband testified, contrastingly:

Q. What did you think paragraph 4 meant when you signed that agreement?

. . . .

A. I took it that if we're not living together after the first year that she would sign the house over to me.

Q. . . . Did you think that if you had sex with her during that year that it would have anything to do with whether or not she was obligated to sign the house over to you?

A. No.

Q. Did anybody tell you . . . that having sex with her might void the provisions of paragraph 4?

A. No.

As a matter of semantics, it cannot be gainsaid that the disputed language is subject to the different and plausible meanings expressed in the foregoing testimony. The language is in fact, and should be in law, ambiguous.

As stated in Justice Meyer's dissent: "Where the language in question is unclear and the parties' intentions are in doubt, interpretation of an agreement is for the jury under proper instruc-

tions from the court. *Parker Marking Systems, Inc. v. Diagraph-Bradley Industries, Inc.*, 80 N.C. App. 177, 341 S.E. 2d 92, *disc. rev. denied*, 317 N.C. 336, 346 S.E. 2d 502 (1986)." And, as stated in Judge Orr's dissent for the Court of Appeals:

> [R]esumption of sexual relations does not, as a matter of law, void a N.C.G.S. § 50-20(d) agreement. Therefore, to conclude that the parties "no longer live separate and apart" because of the resumption of sexual relations, is to give the phrase a meaning beyond the context of this agreement and affix to it a meaning reserved for situations other than a property settlement under N.C.G.S. § 50-20(d). There is no basis in our statutes or case law to conclude that the incorporation of the phrase "live separate and apart for one year" into a N.C.G.S. § 50-20(d) agreement means that sexual relations will result in the conclusion, as a matter of law, that the parties no longer live separate and apart. The intent of the parties as to the application of this phrase in their agreement is instead a question to be decided by the trier of fact.

*Higgins v. Higgins*, 86 N.C. App. 513, 520, 358 S.E. 2d 553, 557 (1987).

By enacting N.C.G.S. § 50-20(d), the General Assembly attempted to put to rest, in the context presented here, "the Draconian effect of the *Murphy* rule." S. Sharp, *supra*, 65 N.C.L. Rev. 195, 205 n.52. The majority today—unfortunately, in my view—resurrects the rule and its effect under the guise of a semantic certainty that is in fact absent. Not only does the majority resurrect *Murphy* from a well-deserved demise, but in the process it stretches it beyond its original effect. I find the holding of the majority contrary to express legislative enactment and neither required by the statutes and case law nor desirable as a matter of public policy. I therefore respectfully dissent.