SYLVIA BENFIELD STEGALL v. ERNEST WILLIAM STEGALL

No. 8922DC1090

(Filed 16 October 1990)

1. **Husband and Wife § 12 (NCI3d)— separation agreement— duress and coercion**

   Summary judgment for defendant refusing to set aside a 1988 separation agreement due to duress and coercion was improper where both parties submitted affidavits, plaintiff stating that she was forced to sign the agreement under duress and coercion, and defendant denying that allegation. Taking plaintiff's affidavit as true, there is a genuine issue of material fact; furthermore, trial courts should use considerable care when examining whether both parties freely entered into a separation agreement because contracts between husbands and wives are special agreements.

   **Am Jur 2d, Divorce and Separation § 836.**

**2. Husband and Wife § 12 (NCI3d)— separation agreement—modification by subsequent agreement**

A 1983 separation agreement was modified by a 1988 separation agreement (if the 1988 agreement was not invalid due to duress and coercion) where the language of the 1988 agreement clearly and unambiguously established that the parties' intention was to fully dispose of their respective property rights.

**Am Jur 2d, Divorce and Separation § 842.**

**3. Husband and Wife § 10.1 (NCI3d)— separation agreement—reconciliation—enforceability of property settlement provisions**

Summary judgment for defendant was reversed where plaintiff and defendant had separated and entered into a separation agreement in 1983; reconciled and resumed marital relations; separated again in 1987; entered into a second separation agreement in 1988; plaintiff alleged that the 1988 separation agreement was invalid due to duress and coercion; and defendant's answer claimed that the 1983 agreement barred plaintiff's action and determined the rights of the parties. Although defendant contended that the property provisions of the 1983 agreement were still in effect even if the reconciliation voided the marital/support provisions of the agreement, the 1983 agreement was clearly a separation agreement and any executory provisions of the 1983 agreement were terminated upon the parties' reconciliation. It is for the trier of fact to determine if the conduct of the parties substantially defeated the purpose of the 1983 agreement; if so, then even the executed provisions of that agreement are void. *Buffington v. Buffington*, 69 N.C. App. 483, and *In re Estate of Tucci*, 94 N.C. App. 428, were criticized and distinguished.

**Am Jur 2d, Divorce and Separation §§ 852-855.**

APPEAL by plaintiff from judgment entered 21 June 1989 by *Judge James J. Booker* in IREDELL County Superior Court. Heard in the Court of Appeals 1 May 1990.

According to plaintiff's affidavit, she and defendant were married on 17 November 1979. On 18 April 1983, they separated. On 18 May 1983, they entered into a separation agreement. In June 1983, plaintiff and defendant resumed their marital relationship.

STEGALL v. STEGALL

[100 N.C. App. 398 (1990)]

Plaintiff moved back into the marital home. They resumed their sexual relationship, had joint bank accounts, took vacations together, shared all of their property and income, and filed joint tax returns. In September 1987, plaintiff and defendant separated again. On 23 February 1988, they entered into a second separation agreement.

On 9 January 1989, plaintiff filed a complaint (1) alleging that the February 1988 separation agreement was invalid due to duress and coercion and (2) requesting that the agreement be set aside. Defendant filed a motion to dismiss and answer claiming that the May 1983 separation agreement (1) barred plaintiff's action and (2) that it determined the rights of the parties. Defendant filed a motion for summary judgment. Each party filed affidavits. The trial court granted summary judgment in favor of defendant. From this judgment, plaintiff appeals.

*Harris, Pressly & Thomas, by Gary W. Thomas, for plaintiff appellant.*

*Tucker, Hicks, Hodge & Cranford, by John E. Hodge, Jr. and Fred A. Hicks, for defendant appellee.*

ARNOLD, Judge.

This case concerns (1) the consequences of entering into a separation agreement under duress and coercion, (2) the legal ramifications of multiple separation agreements, and (3) the effect of reconciliation upon a separation agreement.

**[1]** The first question presented on appeal is whether the district court judge properly granted summary judgment barring plaintiff's action to have the 1988 separation agreement set aside due to duress and coercion. To answer this question we must first determine if there is a material issue of fact surrounding the circumstances under which plaintiff entered into the 1988 separation agreement. Defendant contends summary judgment was properly granted because the evidence raised no material issue of fact, but only a question of law: did plaintiff sign the separation agreement under duress and coercion.

Summary judgment is proper when there is no genuine issue as to any material fact. N.C.R. Civ. P., Rule 56(c). "It is a drastic remedy, not to be granted 'unless it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.' " *Carlton v. Carlton*, 74 N.C.

App. 690, 691, 329 S.E.2d 682, 683 (1985) (citations omitted). The moving party has the burden to establish the lack of any triable issue of fact. *Id.*

In this case, each party submitted affidavits. Plaintiff's affidavit states that she was forced to sign the agreement under duress and coercion. Defendant denies this allegation. Taking plaintiff's affidavit as true, we find there is a genuine issue of material fact on the question of duress and coercion concerning the 1988 separation agreement.

Furthermore, when examining whether both parties freely entered into a separation agreement, trial courts should use considerable care because contracts between husbands and wives are special agreements.

> Courts have thrown a cloak of protection about separation agreements and made it their business, when confronted, to see to it that they are arrived at fairly and equitably. To warrant equity's intervention, no actual fraud need be shown, for relief will be granted if the settlement is manifestly unfair to a spouse because of the other's overreaching.

*Johnson v. Johnson*, 67 N.C. App. 250, 255, 313 S.E.2d 162, 165 (1984). "The relationship between husband and wife is the most confidential of all relationships, and transactions between them, to be valid, must be fair and reasonable. . . . [A] separation agreement . . . must have been entered into without coercion. . . ." *Eubanks v. Eubanks*, 273 N.C. 189, 195-96, 159 S.E.2d 562, 567 (1968). "[A] court of equity will refuse to enforce a separation agreement, like any other contract, which is unconscionable or procured by duress, coercion or fraud." *Knight v. Knight*, 76 N.C. App. 395, 398, 333 S.E.2d 331, 333 (1985).

"Duress is the result of coercion." *Link v. Link*, 278 N.C. 181, 191, 179 S.E.2d 697, 703 (1971). "Duress exists where one, by the *unlawful* act of another, is induced to make a contract or perform or forego some act under circumstances which deprive him of the exercise of free will." *Id.* at 194, 179 S.E.2d at 705 (citations omitted). "It may exist even though the victim is fully aware of all facts material to his or her decision." *Id.* at 191, 179 S.E.2d at 703.

Factors relevant in determining whether a victim's will was actually overcome include "the age, physical and mental condition of the victim, whether the victim had independent advice, whether

the transaction was fair, whether there was independent considera-
tion for the transaction, the relationship of the victim and alleged
perpetrator, the value of the item transferred compared with the
total wealth of the victim, whether the perpetrator actively sought
the transfer and whether the victim was in distress or an emergen-
cy situation." *Curl v. Key*, 64 N.C. App. 139, 142, 306 S.E.2d 818,
820 (1983), *reversed on other grounds*, 311 N.C. 259, 316 S.E.2d
272 (1984).

[2]   The effect of the 1988 separation agreement upon the 1983
agreement is the second question presented. Any analysis of the
construction and effect of a separation agreement will at least
begin by applying the same rules used to interpret contracts general-
ly. *Lane v. Scarborough*, 284 N.C. 407, 409, 200 S.E.2d 622, 624
(1973). When a separation agreement is in writing and free from
ambiguity, its meaning and effect is a question of law for the
court. *Id.* at 410, 200 S.E.2d at 624.

The 1988 separation agreement provides for the distribution
of the parties' property. Neither party contends that the agreement
is ambiguous or unclear. Specifically, the 1988 agreement contains
an "Entire Agreement" provision which states: "[t]his agreement
contains the entire understanding of the parties, and there are
no representations, warranties, covenants, or undertakings other
than those expressly set forth herein." Also, the agreement states
that its purpose is to provide "for a final settlement of all marital
and property rights." In addition, the 1988 agreement makes no
reference to the 1983 separation agreement. "It is a well-settled
principle of legal construction that '[i]t must be presumed the par-
ties intended what the language used clearly expresses, and the
contract must be construed to mean what on its face it purports
to mean.' " *Hagler v. Hagler*, 319 N.C. 287, 294, 354 S.E.2d 228,
234 (1987) (citation omitted). The language of the 1988 separation
agreement clearly and unambiguously establishes that the parties'
intention was to fully dispose of their respective property rights.
Accordingly, we hold that the 1983 separation agreement has been
modified by the subsequent 1988 separation agreement if the 1988
agreement is not declared invalid due to duress and coercion.

[3]   Finally, the third question we must decide is whether the
1983 separation agreement is itself an enforceable contract in the
event that the 1988 agreement is declared void. On this point de-
fendant first argues that in determining the intended effects of

STEGALL v. STEGALL

[100 N.C. App. 398 (1990)]

the 1983 separation agreement it is necessary to separate the property settlement provisions from the marital/support components of the separation agreement. It is his contention that even if the four-year reconciliation voided the marital/support provisions of the agreement, the property provisions of the document are still in effect. We disagree.

Defendant cites *Buffington v. Buffington*, 69 N.C. App. 483, 317 S.E.2d 97 (1984), in support of his argument that the four-year reconciliation had no effect on the property provisions of the 1983 agreement. *Buffington*, however, does not apply here. Since *Buffington* was handed down in 1984, a fire storm of criticism has been leveled at this Court's improper interchange of the terms "separation agreement" and "property settlement" in that opinion. Sharp, *Semantics as Jurisprudence: The Elevation of Form Over Substance in the Treatment of Separation Agreements in North Carolina*, 69 N.C. L. Rev., Issue 2 (forthcoming publication, January 1991); Note, *Property Settlement or Separation Agreement: Perpetuating the Confusion—Buffington v. Buffington*, 63 N.C. L. Rev. 1166, 1173 (1985); Note, *Contractual Agreements as a Means of Avoiding Equitable Distribution—Buffington v. Buffington*, 21 Wake Forest L. Rev. 213, 233 (1985).

North Carolina courts have long recognized a distinction between separation agreements and property settlements. A "pure" separation agreement is a contract in which the husband and wife agree to live apart. Most separation agreements provide for support for the wife and custody and support for minor children. 2 R. Lee, *N.C. Family Law* § 187 (4th ed. 1980). The traditional view, and the one followed in North Carolina, is that separation agreements are void as against public policy unless the parties are living apart at the time the document is executed or they plan to separate shortly thereafter. Furthermore, reconciliation of the parties voids the executory provisions of a separation agreement. *In re Estate of Adamee*, 291 N.C. 386, 391, 230 S.E.2d 541, 545 (1976). A "true" property settlement, on the other hand, involves the release and division of property and property interests between the parties. Lee, *supra*, at § 187; *see generally* Sharp, *Divorce and the Third Party: Spousal Support, Private Agreements, and the State*, 59 N.C. L. Rev. 819 (1981). Parties may enter into property settlements at any time, before, during or after marriage. N.C. Gen. Stat. § 50-20(d) (1987). Of course, in most separations the parties choose to resolve both their marital and property con-

siderations in one document, which leads to the situation we are faced with here, 'whether reconciliation has the same effect on the marital/support provisions of the agreement that it has on the property provisions in the same document. Specifically, while reconciliation may nullify the marital/support provisions of an agreement, does it also invalidate the property provisions of a separation agreement? Much of the confusion surrounding this issue can be traced to *Buffington*.

In 1981, the General Assembly enacted N.C. Gen. Stat. § 50-20(d), which provided that before, during, or after marriage the parties may provide by agreement for the distribution of their "marital property." In *Buffington*, a couple executed a separation agreement but then lived together for eighteen days. *Id.* at 484, 317 S.E.2d at 97. The wife later sought equitable distribution on the grounds that the cohabitation after execution rendered the agreement void. This Court held "the public policy of our state, as expressed by G.S. § 50-20(d), permits spouses to execute a *property settlement* at any time, regardless of whether they separate immediately thereafter or not." *Id.* at 488, 317 S.E.2d at 100 (emphasis added). This was a proper application of the law regarding property settlements before the enactment of G.S. § 50-20(d) and, we believe, a correct interpretation of the statute in light of its specific reference to "marital property." However, the· *Buffington* Court also, and we think incorrectly, stated that "defendant cannot avoid her *separation agreement* solely on the grounds that she continued to live with the plaintiff for 18 days after the agreement was signed." *Id.* at 488, 317 S.E.2d at 100 (emphasis added). Perhaps, by this statement, the Court meant that despite the eighteen-day cohabitation period, separation of the parties was still imminent and thus the agreement still valid. Other language in the opinion, however, indicates that in *Buffington* the Court mistakenly interchanged the terms separation agreement and property settlement. *Id.* at 486-88, 317 S.E.2d at 98-100; *see* Sharp, *supra*, 69 N.C. L. Rev., Issue 2 (forthcoming); Note, *supra*, 63 N.C. L. Rev. at 1173; Note, *supra*, 21 Wake Forest L. Rev. at 233.

The misuse of these two terms threw into doubt the long-standing North Carolina rule that separation agreements are valid only if executed after the parties are separated or when separation is imminent. We do not believe that *Buffington* should be read to mean, or that the Legislature intended, that G.S. § 50-20(d) authorizes couples to execute separation agreements during mar-

riage. In our view, *Buffington* only stands for the proposition that G.S. § 50-20(d) allows parties to execute property settlements before, during or after marriage. If *Buffington* must be read in a broader context, it is only that separation agreements entered into while the parties are still living together but planning to separate may still be valid. *See Carlton*, 74 N.C. App. at 694, 329 S.E.2d at 685. *Buffington*, however, does not govern the effect *reconciliation* has on a separation agreement entered into while the parties are *separated*. In the case *sub judice*, the parties were separated when both separation agreements were executed, rendering defendant's reliance on *Buffington* inappropriate.

Because in the end *Buffington* is easily distinguishable from the case *sub judice* our view on that opinion's continued validity is not critical to a resolution of the matter before us. Nevertheless, our analysis is important because *Buffington* partially set the stage for the emergence of a rule that we believe conflicts with established principles of North Carolina law. In two opinions last year, this Court, in effect, held that the marital/support provisions of a separation agreement should be bifurcated from the property provisions of the same agreement for the purposes of determining the effects of reconciliation. *See Small v. Small*, 93 N.C. App. 614, 621, 379 S.E.2d 273, 277, *rev. denied*, 325 N.C. 273, 384 S.E.2d 579 (1989); *In re Estate of Tucci*, 94 N.C. App. 428, 380 S.E.2d 782 (1989), *aff'd per curiam*, 326 N.C. 359, 388 S.E.2d 768 (1990).

In *Small*, the parties signed a post-nuptial agreement in which they waived alimony and released all rights in the real and personal property then owned and afterwards acquired by the other party. *Small*, 93 N.C. App. at 616, 379 S.E.2d at 274. The couple began experiencing marital difficulties so they executed a separation/property settlement agreement, which expressed their desire to live apart but also to continue to abide by the terms of the post-nuptial contract. *Id.* The parties had isolated sexual contacts shortly thereafter, but then executed a second separation agreement. Again, subsequent to the second separation agreement, the parties had isolated sexual contacts. Later the husband filed for divorce and the wife sought equitable distribution and alimony. *Id.* The husband argued that the wife's claims were barred by the post-nuptial contract and the second separation agreement. The trial court granted summary judgment for the husband and this Court affirmed. *Id.* at 627, 379 S.E.2d at 281.

In upholding the lower court, the Court in *Small* declared that the property settlement provisions should be severed from the remainder of the agreement and "analyzed with reference to those rules which pertain to property settlements rather than separation agreements." *Id.* at 622, 379 S.E.2d at 278. The Court stated that living separate and apart is an essential part of the consideration supporting a separation contract, and if that consideration fails, the contract is void and unenforceable. It is for this reason, the Court noted, that a property settlement is not normally affected by a resumption of marital relations because it deals with property and not support rights, so that living apart furnishes no part of the consideration for the agreement. *Id.* at 625-26, 379 S.E.2d at 280.

While this rationale obviously applies when the agreement involved is a *pure* property settlement, when the agreement is a separation contract where the property provisions and the marital/support provisions are negotiated as "reciprocal consideration" for each other, such logic not only creates inequitable results but also runs contrary to precedent. In our view, *Small* and the later opinion, *Tucci*, advocate a position which fails to recognize that provisions of a separation agreement labeled support may, and often do, constitute reciprocal consideration for property provisions in the same agreement. In such an agreement, the provisions are so interdependent that the execution of one portion of the agreement requires the execution of the other part. Conversely, if one section of the agreement fails or is declared invalid—for example, if the support provisions of an agreement are terminated because the parties reconcile—other provisions of the agreement negotiated with that support provision in mind, in fairness must also fail.

Professor Sally Sharp, perhaps the leading commentator on domestic law in North Carolina, recently wrote, "[t]he assumption that the 'separation agreement' portions and 'property division' portions of a single agreement can be severed from one another is contradicted by common sense, common experience, and—most critically—by the still viable concept of reciprocal consideration." Sharp, *supra*, 69 N.C. L. Rev., Issue 2 (forthcoming). In a recent article discussing this topic, Professor Sharp quotes Professor Homer Clark, "the leading commentator on domestic law in the nation," who has written:

A property settlement is just that portion of the separation agreement dealing with the property of the spouses. The divi-

STEGALL v. STEGALL

[100 N.C. App. 398 (1990)]

sion of property bears a close relation to the agreement concerning alimony, so that . . . [i]t is therefore both misleading and unhelpful to talk as if there were two different kinds of agreement and as if the impact of reconciliation upon one should be different from the impact on the other. Specious distinction of this kind ought to be abandoned . . . .

*Id.* (quoting 2 Clark, *The Law of Domestic Relations in the United States, Practitioner's Edition* § 19.7 (2d ed. 1987)).

Two months after *Small, In re Estate of Tucci*, 94 N.C. App. 428, 380 S.E.2d 782 was issued. In *Tucci*, the parties executed a separation/property settlement agreement in November 1983, reconciled the next month and lived together until September 1985. *Id.* at 429-30, 380 S.E.2d at 783. Mrs. Tucci died in March 1986, and Mr. Tucci filed a notice of dissent from his wife's will. A clerk of superior court concluded that the separation agreement had been rescinded by the reconciliation and the superior court affirmed this decision. *Id.* at 432, 380 S.E.2d at 784. First, this Court somewhat rashly concluded that the statutory right to dissent was a property right separate and apart from any support duty. Then, in reversing the trial court, it held, "[t]he mere fact the Tuccis reconciled is not inconsistent with the property settlement provisions of this Agreement under these circumstances and therefore did not impliedly rescind Mr. Tucci's release of his right to dissent." *Tucci*, 94 N.C. App. at 438, 380 S.E.2d at 788. The opinion emphasizes that trial courts must recognize the differing effect of reconciliation on the individual provisions of a single agreement which combines a separation agreement with a property settlement. *Id.*

In attempting to establish this "severance" rule, *Tucci* relies heavily on *Small*, and both opinions rely on two earlier cases, *Jones v. Lewis*, 243 N.C. 259, 90 S.E.2d 547 (1955), and *Love v. Mewborn*, 79 N.C. App. 465, 339 S.E.2d 487 (1986), and on the claim that a prior opinion by this Court, *Carlton v. Carlton*, 74 N.C. App. 690, 329 S.E.2d 682, which conflicts with the results reached in *Tucci* and *Small*, has been "superseded" by a subsequent North Carolina Supreme Court opinion. *Tucci*, 94 N.C. App. at 439, 380 S.E.2d at 788.

In *Jones*, the parties executed a separation agreement in which the wife conveyed an interest in realty to the husband. The conveyance was executed and the parties subsequently reconciled for

STEGALL v. STEGALL

[100 N.C. App. 398 (1990)]

one night. *Jones*, 243 N.C. at 260, 90 S.E.2d at 549. The wife later claimed an interest in the realty, arguing that their reconciliation invalidated the agreement, but the Court refused this argument. *Id.* at 262, 90 S.E.2d at 550. The Court in *Small*, however, virtually ignores the holding in *Jones* and focuses instead on dicta in the opinion that lends support to its severance rule. *Small* states, "[t]hus, under *Jones* the resumption of relations does not necessarily rescind a property settlement 'which might with equal propriety have been made had no separation been contemplated . . . .'" *Small*, 93 N.C. App. at 625, 379 S.E.2d at 280 (quoting *Jones*, 243 N.C. at 261, 90 S.E.2d at 549). Despite this language, it is clear that the holding in *Jones* rests on the principle that reconciliation invalidates the executory provisions of a separation agreement, and that invalidation will occur *regardless* of whether the provisions in dispute are support or property provisions. Specifically, *Jones* held:

> It is well settled in this State that a conveyance from one spouse to the other of an interest in an estate held by the entireties is valid as an estoppel. . . . We concur in the ruling of the court below to the effect that the conveyance from the petitioner . . . was in all respects regular, having been executed in conformity with the laws of this State at the time of the execution thereof, and that she is estopped to deny the title of the respondent. . . .

*Jones*, 243 N.C. at 262, 90 S.E.2d at 550. The holding is based on the fact that prior to the reconciliation the conveyance of land had been executed, not on whether the provision of the separation agreement in dispute was a property provision as opposed to a support provision.

The second opinion, *Tucci*, pushed the severance rule one step further. It held that in determining what effect reconciliation has on a property provision of a separation agreement, "[i]t is immaterial whether Mr. Tucci's release was executory at the time the Tuccis reconciled." *Tucci*, 94 N.C. App. at 437, 380 S.E.2d at 787. In effect, *Tucci* holds that executory provisions, like executed provisions of a separation agreement, are unaffected by the reconciliation of the parties. As we noted above, *Tucci* relies heavily on *Small*, which cited *Jones* as support. But *Jones* is unequivocal, providing, "[i]t is well established in this jurisdiction that where a husband and wife enter into a separation agreement and thereafter become reconciled and renew their marital relations, the agreement is ter-

minated for every purpose insofar as it remains executory." *Jones*, 243 N.C. at 261, 90 S.E.2d at 549. *Tucci* avoids this language in *Jones* by relying on the premise from *Small* that the property provisions of a separation agreement should be severed from the remainder of the agreement and analyzed as if they were part of a pure property settlement. But it is simply incorrect for *Tucci* to rely on *Jones* for its proposition that executory provisions are not rescinded by a reconciliation because the dispute in *Jones* involved an *executed* realty provision.

*Tucci* also relies on *Love v. Mewborn*, 79 N.C. App. 465, 339 S.E.2d 487, to advance the position that reconciliation does not affect executory provisions of a separation agreement. In *Love*, the parties executed a separation agreement that required the husband to pay the wife $800.00 per month in "alimony" for ten years. *Id.* at 465-66, 339 S.E.2d at 488. The parties briefly reconciled and the husband stopped making the payments. When the wife brought an action against him, the husband argued, in effect, that his executory duty to make the alimony payments had been terminated by the reconciliation. *Id.* at 466, 339 S.E.2d at 488. The trial court, however, correctly ordered the husband to pay the money, and this Court affirmed. *Id.* at 468, 339 S.E.2d at 489.

Although, technically the payments were executory, it was clear in *Love* that the husband's agreement to make the payments was reciprocal consideration for the wife giving up her right to certain marital property. The wife had performed, that is she had executed her half of the bargain by giving up the property, but the husband's performance had remained unfulfilled. Thus, the Court required him to execute his half of the agreement — a technically executory provision. *Tucci* mistakenly characterizes the husband's payments in *Love* as "executory," and then cites the opinion as support for its position that reconciliation does not affect executory provisions of a separation agreement. *Tucci*, 94 N.C. App. at 438, 380 S.E.2d at 788. However, a spouse cannot change an executed provision into an executory provision simply by avoiding compliance with the executed agreement. *Whitt v. Whitt*, 32 N.C. App. 125, 130, 230 S.E.2d 793, 796 (1977). "In the context of an integrated [separation] agreement, part of which has been executed, the label 'executory' simply has no meaning to which any substantive consequence should attach." Sharp, *supra*, 69 N.C. L. Rev., Issue 2 (forthcoming). *Love* simply cannot stand for the premise, as *Tucci* suggests, that reconciliation has no effect on the executory provision

of a separation agreement. *See Tucci,* 94 N.C. App. at 438, 380 S.E.2d at 788.

While it is our impression that *Tucci* misinterpreted prior case law, in the case *sub judice,* defendant's reliance on that opinion is misplaced for another reason. In *Tucci,* the separation agreement in question contained the following paragraph: "[s]hould at any time in the future the parties resume marital cohabitation in any respect . . . the provisions of this Separation Agreement and Property Settlement are and shall remain valid and fully enforceable, and of full legal force and effect." *Tucci,* 94 N.C. App. at 430, 380 S.E.2d at 783. The Stegalls' document, in contrast, contains no such clause and states that as consideration for the separation agreement the parties "propose to continue to live so separate and apart from one another."

Finally, we take issue with the claim in *Tucci* that the case *Carlton v. Carlton,* 74 N.C. App. 690, 329 S.E.2d 682, "has apparently been superseded" by *Higgins v. Higgins,* 321 N.C. 482, 364 S.E.2d 426 (1988). *Tucci,* 94 N.C. App. at 439, 380 S.E.2d at 788. *Carlton* stands for the traditional principle that if the provisions of a separation agreement are *executory* they are invalidated by the resumption of the marital relationship, and in such a case, a suit for equitable distribution would be proper. *Carlton,* 74 N.C. App. at 693, 329 S.E.2d at 684. Conversely, if the provisions were *executed* prior to resuming the marital relationship, an action for equitable distribution would be barred, *unless* the evidence shows an intent to cancel those provisions of the separation agreement. *Id. Tucci* interprets *Buffington* and *Love* as conflicting with these principles recited in *Carlton. Tucci,* 94 N.C. App. at 439, 380 S.E.2d at 788. *Tucci* cites *Higgins* for a statement approving the result in both *Buffington* and *Love,* and concludes from this that *Carlton* has been superseded. *Id.* Based upon our analysis of *Buffington* and *Love,* however, we fail to see the conflict between those two cases and *Carlton.* Furthermore, we read *Higgins* as affirming the rule that parties may enter into property settlements at any time, and that executory provisions of the agreements may be affected by the behavior of the parties. Neither of these positions are at odds with *Carlton.* Moreover, we fail to see how *Higgins* can be read to support the *Small* and *Tucci* positions advocating severance of support/marital provisions from property provisions in separation agreements or the position taken in *Tucci* that executory provisions are not invalidated by reconciliation of the parties.

In the case before us, the Stegalls' 1983 agreement is clearly a separation agreement. From the terms of the agreement and the circumstances of its execution, it is obvious that the parties intended to create a separation agreement. The agreement itself states: "[t]he parties shall henceforth live separate and apart . . . free from all interference, authority and control, direct or indirect, by the other, as fully as if each party were unmarried . . . ." In his motion for summary judgment, defendant submitted an affidavit which refers to the 1983 agreement as a "separation agreement" and never mentions "property settlement." After their 1983 reconciliation, the Stegalls kept joint bank accounts, took vacations together, shared all their property and income and filed joint tax returns for more than four years after the first separation agreement. Accordingly, we hold that any executory provisions of the 1983 separation agreement were terminated upon the parties' reconciliation.

Furthermore, even if the trier of fact determines that the provisions of the 1983 agreement were executed prior to the parties' reconciliation, equitable distribution may still be allowed if "the evidence shows an intent to cancel those provisions of the separation agreement." *Carlton*, 74 N.C. App. at 693, 329 S.E.2d at 684. "A contract may be rescinded or discharged by acts or conduct of the parties inconsistent with the continued existence of the contract, and mutual assent to abandon a contract may be inferred from the attendant circumstances and conduct of the parties." 17 Am. Jur. 2d, *Contracts* § 494 (2d ed. 1964).

> "[T]he effect of reconciliation should be governed by the circumstances in which it is asserted. If, as an aspect of reconciliation, the parties by their words or their conduct express the intention of rescinding the separation agreement in whole or in part, effect should be given to their action. This is just an ordinary application of contract principles.

Clark, *supra*, § 19.7.

"[R]escission of a separation agreement requires proof of a material breach — a substantial failure to perform." *Cator v. Cator*, 70 N.C. App. 719, 722, 321 S.E.2d 36, 38 (1984). For example, changing the title of marital property (*e.g.*, a car, realty, or bank account) from one party's name to both parties' names in contravention of a provision of the separation agreement would effectively nullify that provision. It is for the trier of fact to determine if the conduct

HOOTS v. TOMS AND BAZZLE

[100 N.C. App. 412 (1990)]

of the Stegalls substantially defeated the purpose of the 1983 agreement. If so, then even the executed provisions of that agreement are void.

We therefore reverse the order of the trial court granting summary judgment for defendant and remand this cause to the district court for such further proceedings as are consistent with this opinion.

Reversed and remanded.

Judges PHILLIPS and COZORT concur.