IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-868

Filed 2 July 2024

Wake County, No. 19CVD8313

MICHAEL J. BAER, Plaintiff,

v.

MELISSA B. BAER, Defendant.

Appeal by defendant from judgment entered 8 June 2023 by Judge Mark Stevens in Wake County District Court. Heard in the Court of Appeals 1 May 2024.

*Connell & Gelb PLLC, by Michelle D. Connell, for plaintiff-appellant.*

*Tharrington Smith, LLP, by Alice C. Stubbs, Jeffrey R. Russell, and Casey C. Fidler, for the defendant-appellee.*

TYSON, Judge.

Michael J. Baer ("Husband") appeals from the trial court's order finding Husband owed Melissa B. Baer ("Wife") a distribution of $587,069.23 pursuant to a separation agreement. Husband was also ordered to transfer title to the car Wife drove. All attorney's fees claims were reserved for a later date. We reverse and remand.

## I. Background

Husband and Wife married on 27 December 2014 for four years and officially separated on 19 February 2019 after Wife had filed for and was granted an *ex parte*

domestic violence order of protection ("DVPO") against Husband in Wake County District Court. Husband alleges Wife has claimed similar types of purported abuse during a previous relationship. Husband was 43 years old when the parties married. No children were born of the marriage.

## A. Husband's allegations

Husband alleges he was "subjected to psychological, physical, financial, and emotional abuse at the hand of [Wife]" throughout the marriage "by intimidation and threats, withholding affection, giving the 'silent treatment,' insulting him in front of coworkers and friends, repeatedly belittling him, manipulating him, blaming him for her own self-harm, and accusing him of having affairs." Husband alleges Wife regularly abused drugs, overly consumed alcohol, and called him explicit derogatory names.

Wife had initially met with attorney Kristen Ruth ("Ruth") on 26 September 2018. On 20 December 2018, Wife left a notice and demand letter for Husband on the kitchen counter written by Ruth, dated 13 November 2018, which stated "that she [Ruth] had been retained by [Wife] 'to represent her in anticipation of [the parties'] separation and divorce.' " The letter stated Ruth had advised Wife to remain living within and occupying the marital home until a written settlement agreement was reached.

After receiving this letter during Christmas week, Husband alleges he asked Wife to spend the holidays with her family. Wife refused and requested they spend

the holidays together. Husband's affidavit avers Wife left notes for him on 21 December 2018 stating, "I LOVE YOU!!" and "THIS IS NOT WHAT I WANT!" Neither party acted on the 13 November 2018 letter from Ruth.

On 15 February 2024 between the hours of 7:07 p.m. and 7:15 p.m., Wife gave Husband a second demand letter from Ruth dated ten days earlier, on 5 February 2019, which stated Ruth "shall assume that you are not interested in sharing financial information in order to determine [Wife]'s financial share of the marital estate." The letter concluded by saying "if I do not hear from you by Friday, February 15, 2019[,] by 5:00 p.m. we will proceed accordingly."

Husband alleges Wife was drinking when she gave him the second demand letter. With the receipt of the letter after its response due date and time had expired, Husband was unable to respond timely or to retain an attorney. Husband called his parents two times that night "because [Wife] was 'drinking alcohol and verbally abusing' him." The parties discussed on 17 February 2019 whether they could proceed to a resolution without attorneys. Husband alleges Wife claimed, "she deserved half of what we had and [threatened] that she would ruin [his] life and career if [he] didn't comply."

On 19 February 2019, Wife, again with Ruth's assistance, filed a sworn and verified *ex parte* complaint and motion for a DVPO alleging Husband, among other things, had kicked and shoved her causing numerous bruises, had kicked her dog because he knows it hurts her, had put cameras in every room of their home without

her knowledge, and had restricted her access to their finances.

Later that day and without prior notice, Husband was first served with an *ex parte* domestic violence protective order ("*ex parte* DVPO order") and escorted out of the marital home by law enforcement officers. Husband claims Wife's sworn allegations were false and perjurious. He asserts she had filed the DVPO because he did not agree to give her half of his assets, and the DVPO was prepared and filed "with the intent to gain an unfair advantage in the separation process to gain an inequitable financial settlement."

Husband also claims, "[Wife] was aware that a DVPO would have dire consequences on [Husband]'s reputation and career." Husband filed an answer and a counter claim for a DVPO on 22 February 2019.

The ten-day hearing on the *ex parte* DVPO order was continued and scheduled for 13 March 2019. Prior to the hearing, parties participated in mediation with certified Mediator Katherine Frye on 6 March 2019.

Leading up to mediation, and out of fear of violating the *ex parte* DVPO order, Husband did not return to his office, because Wife's father, Jim Bennett ("Bennett"), worked in the same office. Husband alleges Bennett was given the option to relocate immediately to another office in the community, but chose not to do so for over a month, preventing Husband from entering his own office. Husband asserts an internal investigation was initiated by his employer due to Wife's false allegations of domestic violence.

Husband alleges his employer told him to "handle it" and the company could not have someone in a management role with a DVPO against them. Further, Husband asserts the DVPO would prevent him "from ever achieving General Partnership with the Firm which [he] had been working for 25 years to achieve." Husband alleges he was at risk of losing his job as a financial advisor depending on the outcome of the DVPO hearing. Husband alleges Wife was aware of the importance of reputation in his career and had discussed the impact this *ex parte* claim would have on his income.

Husband asserts Ruth and Husband's attorney, Len Mueller, had agreed to a two-part mediation, in which the parties would first resolve the issues and allegations surrounding the DVPO, and thereafter negotiate a complete resolution to the separation. Husband alleges once in mediation Wife abandoned and reneged on their two-part agreement and was unwilling to resolve the DVPO unless a global resolution and settlement was reached.

Husband avers he had no choice, that he either had to agree to the one-sided terms or take chances at the DVPO hearing. He believed he would be fired from his job and suffer irreparable damages to his reputation and career if the *ex parte* DVPO hearing was not favorable to him.

## B. Wife's Allegations

Wife asserts Husband's counsel drafted the Separation and Property Settlement Agreement ("Agreement") at the end of mediation in front of the mediator.

Both parties initialed every page of the Agreement, and both parties' signatures were notarized by the Mediator.

The terms of the Agreement include: (1) Husband must transfer a home to Wife; (2) Husband must satisfy the mortgage on Wife's *parents' home*; (3) Husband must pay off Wife's vehicle; (4) Husband must pay Wife $100,000 immediately at mediation; and, (5) Husband must make two payments of $237,500 and transfer business interests to Wife. At mediation, Husband wrote Wife a check for $100,000 and deeded her the home per the Agreement.

The Agreement includes specific language relating to the voluntary execution of the Agreement. Paragraph 20 states: "Each party has read and fully understands each and every provision of the [A]greement, and both parties acknowledge that the Agreement is fair and is not the result of fraud, duress[,] or undue influence exercised by either party upon the other or by any other person or persons upon either."

On 7 March 2019, both parties filed voluntary dismissals of their claims for domestic violence. For months thereafter, both parties complied with the terms of the Agreement. After Husband filed his initial complaint and Wife filed her counterclaim, Husband stopped complying with the terms of the Agreement. By this time, Husband had performed many obligations under the Agreement, including transferring real property to Wife; paying off the loan to Wife's vehicle; dismissing his counter claim for DVPO against Wife; continuing to provide Wife with medical, dental, and vison insurance; paying Wife $100,000 of the $575,000 distributive award

payment; and filing a 2018 joint income tax return with Wife.

Husband alleges he only signed and complied with Agreement because Wife had threatened him, and he feared Wife would make more claims similar to those in the *ex parte* DVPO order.

Husband's Affidavit asserts:

> Just as was the case in the weeks leading up to mediation, during the weeks and months following mediation, I suffered high levels of stress, anxiety and pressure. The stress did not end with the signing of an [A]greement and dismissal of the DVPO. The DVPO started a domino effect that created stress, tension, and anxiety in all aspects of my life. My reputation with my employer was tarnished and in jeopardy. My relationships, career opportunities, family, and stability were all in jeopardy. After being subject to years of abuse in my marriage and now being subject to this abusive tactic, my emotional trauma was intensified. I struggled with sleeping, eating, and general everyday functioning. I felt as though my life was under a microscope[,] and I had to ensure that [Wife] remained satisfied so that she would not make false claims to my company.

## C. Dr. Ludlam's Affidavit

The affidavit of Dr. Julianne Ludlam ("Dr. Ludlam") was filed and presented during the summary judgment hearing. Dr. Ludlam holds a bachelor's degree in psychology from Grinnell College, a master's degree in human development and psychology from Harvard University, and a Ph.D. degree in clinical psychology from Alliant International University.

Dr. Ludlam's affidavit states:

5. I have been retained to conduct a psychological evaluation of Michael Baer to assess his mental status during his separation from his former wife, Melissa Baer. Specifically, I have been asked to opine as to whether [Husband] was likely under duress, or experiencing a heightened level of psychological pressure, at the time he executed an [A]greement with [Wife] on March 6, 2019, and whether such duress or heightened pressure is likely to have continued after the [A]greement was executed.

6. Over the course of several months, I assessed [Husband] through interviews, observation, and testing.

7. In my opinion, [Husband] would likely have qualified for a diagnosis of adjustment disorder, with anxiety, during the separation process and that diagnosis would have continued during the time period after the [A]greement was executed and he continued to comply with the [A]greement. Adjustment disorders involve the presence of emotional or behavioral symptoms in response to an identifiable stressor. The particular stressors that affected [Husband] appeared to be continuous and ongoing and appeared to cause [Husband] to experience functional impairment in his decision-making.

8. It is my opinion that [Husband] did appear likely to have experienced intense psychological pressure both at the time he signed the separation [A]greement and the period of time that he continued to comply with the [A]greement. The pressure felt by [Husband] would have been greater than others based on his particular psychological makeup. [Husband]'s ability to make decisions was likely impaired by the pressure and anxiety he felt both at the signing of the [A]greement and after it was signed and he continued to comply with the separation [A]greement.

9. It is my opinion that [Husband] felt unable to make a decision and as though he did not have a choice as a result of the pressure and anxiety he likely experienced at the time he signed the separation [A]greement and while he complied with the [A]greement.

This matter was previously before this Court, but was dismissed as interlocutory. The facts from that prior opinion are summarized below:

> In June 2019, [Husband] filed the complaint in this action, seeking a declaratory judgment to set aside the separation [A]greement, alleging that it was unenforceable on the grounds of duress and undue influence. [Wife] answered the complaint and asserted a counterclaim for breach of contract. [Wife] later filed a motion for summary judgment, along with supporting affidavits. [Husband] filed affidavits opposing the motion.
>
> After a hearing, the trial court entered an order granting [Wife]'s motion for summary judgment in part and denying it in part. The court granted summary judgment in [Wife]'s favor on [Husband]'s declaratory judgment claim, ruling as a matter of law that [Husband] ratified the separation [A]greement. The trial court also granted partial summary [judgment] in [Wife]'s favor on her breach of contract claim, ruling that "[Wife]'s claim for Breach of Contract is granted as a matter of law in favor of the [Wife]"; that there was "no genuine issue of material fact with respect to damages regarding the distributive award owed to the [Wife] as a result of [Husband]'s breach of contract, and judgment shall be entered against [Husband] in the sum of $475,000 in favor of the [Wife] as a tax-free distributive award owed to date under the terms of the Separation and Property Settlement Agreement"; and that there are "genuine issues of material fact as to the amount and nature of remaining damages resulting from [Husband]'s breach of contract" and the "issue of remaining damages resulting from [Husband]'s breach of contract shall be set for future hearing upon [Wife]'s request."
>
> Plaintiff timely appealed the partial summary judgment order.

*Baer v. Baer*, 286 N.C. App. 775, 879 S.E.2d, 2022 N.C. App. LEXIS 793, 2022 WL 17420125, at *1-2 (2022) (unpublished).

On 8 June 2023, the trial court entered a final judgment awarding Wife damages in the amount of $587,069.23. On 14 June 2023, Husband filed a notice of appeal of the order on summary judgment entered on 14 January 2022 and the final judgment entered on 8 June 2023.

## II. Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b) (2023). The outstanding issue and purported reservation of attorney's fees is collateral to the final judgment on the merits and does not render an appeal of the substantive order as interlocutory. *Duncan v. Duncan*, 366 N.C. 544, 545, 742 S.E.2d 799, 800 (2013). The appeal is properly before this Court.

## III. Issues

Husband contends summary judgment was improper because genuine issues of material fact exist regarding the formation and validity of the Agreement. He argues the trial court erred by granting summary judgment on Wife's motion by concluding as a matter of law Husband had ratified the Agreement, despite forecasted expert evidence and other evidence tending to show the Agreement was executed and complied with under duress and undue influence. If this Court holds issues of material fact exist, the issue of whether the breach of contract occurred depends upon the Agreement's initial validity.

## IV. Standard of Review

"Our standard of review of an appeal from summary judgment is *de novo*; such

judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Powell v. Kent,* 257 N.C. App. 488, 490, 810 S.E.2d 241, 243 (2018) (citation and quotation marks omitted).

"Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Stevens v. Heller,* 268 N.C. App. 654, 658-59, 836 S.E.2d 675, 679 (2019) (citation and quotation marks omitted).

## V.  Ratification of Separation Agreement

Husband argues he did not form or ratify the Agreement because it was executed under duress and undue influence and he remained under duress while complying with the terms of the Agreement. Husband further argues the trial court erred in rulings as a matter of law on factual issues for a jury's determination. Husband contends genuine issues of material fact exist of whether he ratified the Agreement, because expert evidence tends to show he was under duress and undue influence.

### *1.  Genuine Issues of Material Fact*

First, Husband contends the trial court erred in dismissing his complaint with prejudice, as genuine issues of material fact exist of whether he had voluntarily agreed or ratified the separation Agreement while under duress.

Summary judgment is proper "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." An issue of material fact is one which may constitute a legal defense or is of such a nature as to affect the result of the action or is so essential that the party against whom it is resolved may not prevail; an issue is genuine if it can be supported by substantial evidence.

*Cox v. Cox*, 75 N.C. App. 354, 355, 330 S.E.2d 506, 507 (1985) (first quoting N.C. R. Civ. P. 56(c); and then citing *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E.2d 795 (1974)).

## 2. *Stegall v. Stegall*

Husband's claim of duress was dismissed on summary judgment after the court decided as a matter of law Husband had ratified the Agreement. Husband argues genuine issues of material fact exist of whether or not he had continued to act under duress while complying with the Agreement because it "is of such a nature as to affect the result of the action[.]" *Id.* This Court has previously held "there is a genuine issue of material fact on the question of duress and coercion concerning [a] separation agreement." *Stegall v. Stegall*, 100 N.C. App. 398, 401, 397 S.E.2d 306, 307 (1990).

This Court in *Stegall*, regarding an appeal of summary judgment, determined whether a genuine issue of material fact existed surrounding the circumstances when plaintiff entered into a separation agreement. *Id.* at 400, 397 S.E.2d at 307. The Court noted "[t]he moving party has the burden to establish the lack of any triable issue of fact." *Id.* at 401, 397 S.E.2d at 307. In *Stegall*, each party had submitted

affidavits to the trial court. *Id.* Plaintiff's affidavit alleged she was forced to sign the separation agreement under duress and coercion, while defendant's affidavit denied her allegations. *Id.* Taking plaintiff's affidavit as true, this court in *Stegall* reversed the trial court's order granting summary judgment and concluded genuine issues of material fact existed regarding the question of plaintiff's duress when executing the separation agreement. *Id.* at 412, 397 S.E.2d at 314.

### 3. *Asher v. Huneycutt,*

Wife cites the case of *Asher v. Huneycutt,* a cause of action for negligence, and argues a grant of summary judgment "should be affirmed on appeal if there is any ground to support the decision." *Asher v. Huneycutt,* 284 N.C. App. 583, 588, 876 S.E.2d 660, 666 (2022) (quoting *Proffitt v. Gosnell,* 257 N.C. App. 148, 151, 809 S.E.2d 200, 204 (2017)) (clarifying when summary judgment is appropriate in a cause of action for negligence).

The present case is distinguishable from *Asher,* because it does not concern a cause of action for negligence. Considering when summary judgment is appropriate for causes of action to set aside a separation agreement due to duress and coercion, this Court held "when examining whether both parties freely entered into a separation agreement, trial courts should use considerable care because contracts between husbands and wives are special agreements." *Stegall,* 100 N.C. App. at 401, 397 S.E.2d at 307.

Similarly to *Stegall*, Husband submitted both his and Dr. Ludlam's affidavits to the trial court. Taking these affidavits as true and reviewed in the light most favorable to him, Husband asserts he signed and had partially complied with the Agreement because he "felt unable to make a decision and as though he did not have a choice as a result of the pressure and anxiety he likely experienced at the time he signed the separation [A]greement and while he complied with the [A]greement." Viewed in the light most favorable to Husband, the trial court erred in determining no genuine issue of material fact existed as a matter of law. The order awarding summary judgment is reversed. *See id.*

### 4. Ratification of the Agreement

This Court has held if plaintiff executes a "separation agreement under duress or fear induced by wrongful acts or threats, the separation agreement is invalid and not a bar to equitable distribution unless the separation agreement was ratified by plaintiff." *Cox*, 75 N.C. App. at 356, 330 S.E.2d at 508. Acknowledging the signed Agreement at mediation and subsequent partial compliance of the same, Husband argues he was coerced and under duress at the time of execution and throughout the time he was partially complying with the terms of the Agreement post-execution, voiding ratification.

Wife argues Husband, "a grown, professional, intelligent, and educated man sitting in mediation with his attorney could [not] genuinely be under duress to sign [the] [A]greement." She further asserts: "more preposterous is the claim that the very

same man continued to act under duress after the alleged source of his distress ceased to exist."

Taking Husband's asserted facts in the light most favorable to him as true, Husband could not have ratified the Agreement if he was under duress at the time of execution and subsequently while acting in partial compliance with the Agreement. This Court ruled duress "may exist even though the victim is fully aware of all facts material to his or her decision." *Stegall*, 100 N.C. App. at 401, 397 S.E.2d at 308. "A court of equity will refuse to enforce a separation agreement, like any other contract, which is unconscionable or procured by duress, coercion or fraud." *Id.* at 401, 397 S.E.2d at 307 (citation omitted). Unsupported or falsely verified e*x parte* DVPOs are perjurious, unlawful, sanctionable, and cannot be misused to obtain unfair advantages in settlement negotiations. *See* N.C. Gen. Stat § 50B-1 to 50B-9 (2023); *Johns v. Johns*, 195 N.C. App. 201, 206, 672 S.E.2d 34, 38 (2009) (submitting pleadings not well grounded in fact and for an improper purpose is sanctionable).

Summary judgment is improper if genuine issues of material fact exist. The Agreement cannot be deemed valid as a matter of law because the Agreement could not have been ratified under duress. *Id.*

## VI.    Breach of Agreement

Courts cannot hold a contract has been breached as a matter of law when genuine issues of material fact exist concerning the underlying formation and validity of such contract. *See Voliva v. Dudley*, 267 N.C. App. 116, 832 S.E.2d 479 (2019)

(reversing the trial court's order granting plaintiff's summary judgment motion "[b]ecause genuine issues of material fact exist regarding whether the Note is a valid and enforceable contract"). Because genuine issues of material facts exist regarding the underlying validity of the Agreement, the trial court's decision granting summary judgment on Wife's claim for breach of contract as a matter of law is error and is reversed. *See id.*

## VII. Conclusion

Husband provided sufficient evidence tending to show genuine questions of material fact remain of whether he was under duress when the Agreement was executed and during the time he continued to comply with the Agreement. This evidence provides a genuine issue of material fact of whether or not the Agreement could have been ratified by Husband, taken as true and viewed in the light most favorable to the nonmovant.

The trial court erred by concluding as a matter of law Husband was not coerced and had ratified the Agreement, and then finding Husband had breached the potentially invalid Agreement. We reverse the trial court's order granting summary judgment against Husband and in partial favor of Wife and remand for further proceedings. The issues, if any, on attorney's fees are preserved for further review. *It is so ordered.*

REVERSED AND REMANDED.

Judges ARROWOOD and CARPENTER concur.